UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:08-cv-03315-CAS(MANx) | Date | July 6, 2015 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. DAVID MAXWELL-JOLLY, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Lynn Carman<br>Stanley Friedman | Susan Carson |

**Proceedings:**     PETITIONERS' AND INTERVENORS' MOTIONS FOR ATTORNEYS' FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1021.5 (Dkt. Nos. 426, 427, 429)

## I. INTRODUCTION

On April 22, 2008, petitioners filed a verified petition for writ of mandamus in Los Angeles County Superior Court, seeking mandamus and injunctive relief against respondents California Department of Health Care Services (the "Department"); Sandra Shewry, Director of the Department (the "Director"), and Does 1 through 50.[1] Dkt. No. 1. The verified First Amended Petition ("FAP") was filed on May 19, 2008, also in

---

[1] Petitioners are health care advocacy organizations, providers, and recipients under California's state-federal Medicaid program, called "Medi-Cal." Specifically, Mark Beckwith, Margaret Dowling, and Jason Young are individual Medi-Cal beneficiaries. FAP ¶¶ 7, 15–17. Independent Living Center of Southern California ("Independent Living") is a nonprofit corporation that advocates for people with disabilities. Id. ¶¶ 2, 18. Gray Panthers of Sacramento and Gray Panthers of San Francisco are nonprofit corporations that advocate health care-related issues for their members, most of whom are over the age of 50. Id. ¶¶ 3, 4, 10. Gerald Shapiro and Sharon Steen are retail pharmacists and Medi-Cal service providers. Id. ¶¶ 5, 6. Tran Pharmacy, Inc. is a pharmacy and Medi-Cal service provider. Id. ¶ 8. Since this litigation began, the Director in charge of the Department has changed multiple times. These changes are not material for purposes of the instant motion. On June 1, 2008, petitioners dismissed the Department, leaving the Director as the only respondent. Dkt. No. 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS(MANx) | Date | July 6, 2015 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. DAVID MAXWELL-JOLLY, ET AL. | | |

Superior Court. Dkt. No. 6. On May 19, 2008, respondents removed the action to federal court on the basis of federal question jurisdiction. Dkt. No. 1. On September 22, 2014, the Court granted a joint motion for approval of a settlement agreement filed by petitioners, intervenors, and the Director. Dkt. No. 420.

On April 22, 2015, petitioners filed a motion for attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, to be paid to the law offices of Stanley L. Friedman ("Friedman"). Dkt. No. 426. On April 23, 2015, intervenors Acacia Adult Day Services, Theodore M. Mazer, Ronald B. Mead, and Sacramento Family Medical Clinics, Inc. filed a motion for fees to be paid to the law firm of Hooper, Lundy & Bookman, P.C. ("HLB"), under the same statute. Dkt. Nos. 427, 472. That same day, petitioners filed a motion for fees to be paid to Lynn S. Carman ("Carman") pursuant to section 1021.5. Dkt. No. 429. On May 13, 2015, the Director opposed all three motions. Dkt. No. 456. The proponent of each motion filed a reply. Dkt. Nos. 462, 466, 468. On July 6, 2015, the Court held a hearing. After carefully considering the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

### A. Statutory Background

The Medicaid Act authorizes the federal government to distribute funds to the states for the purpose of providing medical assistance to low-income persons who are aged, blind, disabled, or members of families with dependent children. Although the states are not required to participate in Medicaid, those that choose to do so are subject to certain conditions. Armstrong v. Exceptional Child Care Center, Inc., 135 S. Ct. 1378, 1382 (2015). Among these conditions, Section 30(A) of the Medicaid Act requires each participating state to have a Medicaid Plan that will

> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan (including but not limited to utilization review plans as provided for in section 1396b(i)(4) of this title) as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS(MANx) | Date | July 6, 2015 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. DAVID MAXWELL-JOLLY, ET AL. | | |

> with efficiency, economy, and quality of care and are sufficient
> to enlist enough providers so that care and services are available
> under the plan at least to the extent that such care and services
> are available to the general population in the geographic area . . . .

42 U.S.C. § 1396a(30)(A). California law requires that the Department administer Medi-Cal in accordance with the state plan, applicable state law, and Medi-Cal regulations. Cal. Code Regs. Tit. 22, § 50004(b).

### B. The 2008 AB 5 Litigation

In 2008, California faced a budgetary crisis. On February 16, 2008, the California Legislature enacted Assembly Bill X3 5 ("AB 5"). Among other provisions, AB 5 reduced by ten percent Medi-Cal fee-for-service payments for physicians, dentists, pharmacies, adult day healthcare centers, clinics, health systems, and other providers. These cuts were to take effect for services provided on or after July 1, 2008. AB 5 also reduced payments to managed healthcare plans and acute care hospitals not under contract with the Department for inpatient services provided on or after July 1, 2008. Petitioners alleged that these rate reductions violated the Medicaid Act because the Department and the Legislature failed to consider efficiency, economy, and quality of care as required by Section 30(A) of that Act, and that the reductions were therefore invalid under the Supremacy Clause of the United States Constitution. See Dkt. No. 121 at 2–4.

On May 30, 2008, petitioners moved to preliminarily enjoin the rate reductions. On June 25, 2008, the Court denied that motion, concluding that petitioners could not enforce Section 30(A) under 42 U.S.C. § 1983 or the Supremacy Clause, and therefore could not show a likelihood of success on the merits. Dkt. No. 47 at 5–10.[2] On July 11,

---

[2] In May 2008, HLB filed a separate action challenging the AB 5 reductions in Los Angeles County Superior Court. That action was removed to federal court, but then remanded to the Superior Court, which denied a motion for a preliminary injunction. Dkt. No. 428-1 ¶ 34. On August 29, 2008, HLB filed a motion to intervene in the instant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:08-cv-03315-CAS(MANx) | Date | July 6, 2015 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. DAVID MAXWELL-JOLLY, ET AL. | | |

2008, however, the Ninth Circuit vacated and remanded, holding that a "plaintiff may bring suit under the Supremacy Clause to enjoin implementation of a state law allegedly preempted by a federal statute, regardless of whether the federal statute at issue confers an express 'right' or cause of action on the plaintiff." Indep. Living Ctr. of S. Cal., Inc. v. Shewry, 543 F.3d 1047, 1048 (9th Cir. 2008).

      On August 18, 2008, this Court granted in part petitioners' motion for a preliminary injunction, finding that the Department had a duty to consider certain factors in reducing Medi-Cal rates and had not shown that it had done so; rather, it appeared that the cuts were imposed solely as a response to California's fiscal emergency. Dkt. No. 121 at 10. The Court also concluded that petitioners had shown likely irreparable harm through reduced access for Medi-Cal beneficiaries to prescription drugs and services from some (but not all) service provider types at issue. Id. at 11–20. Accordingly, the Court enjoined enforcement of the ten percent reductions for "payments under the Medi-Cal fee-for-service program for physicians, dentists, adult day health care centers, clinics, health systems, and other providers for services provided on or after July 1, 2008," but denied preliminary relief sought with regard to rate reductions affecting managed care

---

action on behalf of a medical clinic, a physician, a dentist, an adult day health care center, and three health care districts. On September 15, 2008, the Court granted that motion as to all proposed intervenors except the health care districts. Dkt. No. 174. On September 29, 2008, HLB moved to intervene on behalf of additional health care providers and suppliers, Dkt. No. 188; on October 20, 2008, the Court denied that motion without prejudice and permitted those parties to participate as amicus curiae, Dkt. No. 207. On October 5, 2009, HLB filed a renewed motion to intervene on behalf of parties including the California Hospitals Association ("CHA"), Dkt. No. 279; that motion was renewed again on March 1, 2010, Dkt. No. 339; and granted on March 26, 2010, Dkt. No. 356. Lloyd Bookman declares that, even before parties represented by HLB formally intervened in the AB 5 litigation handled by this Court, HLB attorneys participated in that litigation by appearing at the hearing for and offering argument in support of petitioners' motion for a preliminary injunction, and by preparing declarations that petitioners relied on as evidence supporting their showing of irreparable harm. Id. Bookman also declares that HLB attorneys participated in briefing and argument of the federal AB 5 litigation before the Ninth Circuit. Id. ¶ 35.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**         'O'

| Case No. | 2:08-cv-03315-CAS(MANx) | Date | July 6, 2015 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. DAVID MAXWELL-JOLLY, ET AL. | | |

plans and payments to non-contract acute care hospitals. Id. at 21–22. On August 27, 2008, the Court modified the relief provided in the August 18, 2008 order to only apply prospectively from the date of that prior order because of the Court's view that retroactive relief was barred by principles of sovereign immunity. Dkt. No. 135. On September 15, 2008, the Court further modified the injunction "to clarify that its application as to pharmacies is limited to prescription drugs," and to strike the injunction's reference to "health systems, and other providers." Dkt. No. 175.

     On July 9, 2009, the Ninth Circuit decided several appeals stemming from the preliminary injunction. See Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly, 572 F.3d 644 (9th Cir. 2009), vacated and remanded by Douglas v. Indep. Living Ctr. of S. Cal., 132 S. Ct. 1204 (2012). The Ninth Circuit affirmed the issuance of the preliminary injunction, finding that neither the Department nor the Legislature had "studied the impact of the ten percent rate reduction on the statutory factors of efficiency, economy, quality, and access to care prior to enacting AB 5," or "considered reliable cost studies when adjusting its reimbursement rates," and affirming the finding that Medi-Cal beneficiaries who could be forced to go without medical care faced a likelihood of irreparable harm. Id. at 652, 657–58. The Ninth Circuit also reversed this Court's modification of the order to apply only prospectively, finding that the Director had waived sovereign immunity and that the Eleventh Amendment therefore provided no bar to retroactive relief. Id. at 661–63. The Court subsequently amended the preliminary injunction to comport with the Ninth Circuit's mandate. Dkt. Nos. 323, 328.

     On March 15, 2010, petitioners (represented by Carman and Friedman) moved to set aside one-quarter of the approximately $70 million to be reimbursed to providers for AB 5 reductions implemented between July 1, 2008 and August 17, 2008, so that such funds could be available to pay attorneys' fees. Dkt. No. 351. On April 9, 2010, the Court denied that motion as premature because the case had not been finally adjudicated or settled and "[n]either side ha[d] provided any reason why this Court at the conclusion of the case could not fashion an order requiring the state of California to pay attorneys' fees based on what is ultimately the value of any judgment or settlement." Dkt. No. 360 at 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS(MANx) | Date | July 6, 2015 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. DAVID MAXWELL-JOLLY, ET AL. | | |

### C.    AB 1183

Assembly Bill 1183 ("AB 1183") became effective on September 30, 2008, and provided that the ten percent rate reductions previously called for by AB 5 would end on February 28, 2009. Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly, 590 F.3d 725, 727 (9th Cir. 2009). AB 1183 also enacted new one or five percent Medi-Cal rate reductions, depending on the type of service provider. Id. On January 16, 2009, the pharmacy petitioners from the AB 5 litigation—joined by Managed Pharmacy Care (a California corporation with hundreds of Medi-Cal pharmacy provider members) and represented by Carman and Friedman—filed a lawsuit advancing a similar theory based on Section 30(A) and the Supremacy Clause. On February 27, 2009, the Court preliminarily enjoined the Director from "reducing by five percent payments to pharmacies for prescription drugs . . . provided under the Medi-Cal fee-for-service program." See Case No. 2:09-cv-00382-CAS-MAN, Dkt. No. 34. The Ninth Circuit affirmed on March 3, 2010. See Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly, 374 F. App'x 690, 691–92 (9th Cir. 2010), vacated and remanded by Douglas, 132 S. Ct. at 1204. In 2011, as memorialized in Senate Bill 90, the State of California agreed to terminate some of the rate reductions described herein as to prospective payments, and to refrain from seeking certain types of new Medi-Cal cuts through at least June 30, 2012. Dkt. No. 428-1 ¶ 41 & Ex. A.

### D.    The Supreme Court's Decision Vacating and Remanding the Ninth Circuit's Orders Upholding the Preliminary Injunctions

In 2011, the Supreme Court granted certiorari in the instant AB-5 and AB-1183 cases, among others, "to decide whether Medicaid providers and recipients may maintain a cause of action under the Supremacy Clause to enforce a federal Medicaid law . . . that in their view conflicts with (and pre-empts) state Medicaid statutes that reduce payments to providers." Douglas v. Indep. Living Ctr. of S. Cal., Inc., 132 S. Ct. 1204, 1207 (2012). In its merits opinion, the Supreme Court explained that, prior to oral argument, the federal agency in charge of administering Medicaid, the Centers for Medicare and Medicaid Services ("CMS"), had disapproved Medicaid plan amendments submitted by the Department and designed to implement AB 5 and AB 1183, concluding that those plans did not satisfy Section 30(A). Id. at 1209. Following oral argument, however, CMS "reversed course and approved several of California's statutory amendments to its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS(MANx) | Date | July 6, 2015 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. DAVID MAXWELL-JOLLY, ET AL. | | |

plan," including "a limited retroactive implementation of some of the amendments' rate reductions." Id. Although CMS's about-face did not moot the action, the Court found that the cases had been placed "in a different posture" because CMS's new position (1) might "change the answer" to whether AB 5 and AB 1183 are consistent with Section 30(A), and (2) might require petitioners to proceed by seeking review of CMS's determination under the Administrative Procedure Act, rather than pursuing a lawsuit against the State of California under the Supremacy Clause. Id. at 1210. The Court concluded:

> In the present posture of these cases, we do not address whether the Ninth Circuit properly recognized a Supremacy Clause action to enforce this federal statute before the agency took final action. To decide whether these cases may proceed directly under the Supremacy Clause now that the agency has acted, it will be necessary to take account, in light of the proceedings that have already taken place, of at least the matters we have set forth above. It must be recognized, furthermore, that the parties have not fully argued this question. Thus, it may be that not all of the considerations that may bear upon the proper resolution of the issue have been presented in the briefs to this Court or in the arguments addressed to and considered by the Court of Appeals. Given the complexity of these cases, rather than ordering reargument, we vacate the Ninth Circuit's judgments and remand the cases, thereby permitting the parties to argue the matter before that Circuit in the first instance.

Id. at 1211.

### E. The Settlement Agreement

Following the Supreme Court's remand order, the parties entered into mediation efforts that eventually bore fruit. See Dkt. No. 409 (Ninth Circuit order granting parties' joint motion to refer cases to mediation and continue briefing during the pendency of mediation). On August 19, 2014, the parties submitted a joint motion to approve a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:08-cv-03315-CAS(MANx) | Date | July 6, 2015 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. DAVID MAXWELL-JOLLY, ET AL. | | |

Settlement Agreement. Dkt. No. 417. The Court approved the Settlement Agreement on September 22, 2014. Dkt. No. 420.

Pursuant to the Settlement Agreement, the parties agreed to dismiss their pending appeals from the preliminary injunctions issued in these cases, and the petitioners agreed to dismiss their actions with prejudice, subject to this Court's retention of jurisdiction to hear motions for attorneys' fees, and to enforce the Settlement Agreement. The Director agreed to forgo efforts to recoup funds paid to Medi-Cal providers as a result of the preliminary injunctions in these cases, except with regard to (1) hospital members of the CHA that choose to opt out of the Settlement Agreement, (2) any provider that institutes a new suit or fails to dismiss a pending action regarding the AB 5 or AB 1183 reductions, and (3) plaintiff hospitals in two specified related cases. In turn, the petitioners agreed to release claims concerning or relating to those payment reductions, excluding individual providers' claims relating exclusively to computation accuracy. And the Director agreed to release claims for purported overpayments made while challenged rate reductions were enjoined, but for which reductions the Department ultimately obtained CMS approval. Dkt. No. 417-1 at 4–5.

The Settlement Agreement permits petitioners and their attorneys, Carman and Friedman, to file applications within thirty days of the effective date for attorneys' fees for services performed in litigating the cases described above. Dkt. No. 417-2 Ex. A at 14. The Director retained the right to oppose any such request, and raise "any and all arguments and defenses that it may have to an award of attorneys' fees and to the amount of such award." Id. The Settlement Agreement similarly allows intervenors and HLB to seek fees in the AB 5 case, with the Director retaining the right to oppose such effort. Id. at 14–15. The Settlement Agreement also permits "any plaintiffs' attorney who has appeared in one or more of the Applicable Cases" to seek attorneys' fees "from Medicaid providers that purportedly obtained a benefit from counsel's work" (not from the Department or other state entities), and subject to certain other conditions. Id. at 15.[3] Except as summarized above, the Settlement Agreement releases the Department from liability for attorneys' fees.

---

[3]HLB's motion to recover funds from hospitals that purportedly benefitted from this and related Medi-Cal rate reduction litigation will be discussed in a separate order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:08-cv-03315-CAS(MANx) | Date | July 6, 2015 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. DAVID MAXWELL-JOLLY, ET AL. | | |

### III. ANALYSIS

As stated, each of the three motions discussed herein seeks attorneys' fees pursuant to California Code of Civil Procedure 1021.5, which provides in relevant part:

> Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

Cal. Civ. Proc. Code § 1021.5. This "private attorney general" statute is intended "to encourage suits effectuating a strong public policy by awarding substantial attorneys' fees . . . to those who successfully bring such suits and thereby bring about benefits to a broad class of citizens." Woodland Hills Residents Ass'n v. City Council, 23 Cal. 3d 917, 933 (1979) (internal quotation marks and brackets omitted). The Director opposes any award under section 1021.5 on several grounds. First, he submits that section 1021.5 does not apply because this case involved the litigation of federal claims in federal court. Second, he argues that even if section 1021.5 did apply, it would not support an award of attorneys' fees on the facts of this case. Finally, the Director argues that the fees sought through each motion are excessive. Because the Court agrees with the Director's first argument, the Court does not reach the remaining contentions.

Since the Supreme Court decided Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975), the general "rule in federal courts has been that, absent an express statutory command, attorneys' fees will not be awarded in civil cases." Home Sav. Bank, F.S.B. v. Gillam, 952 F.2d 1152, 1162 (9th Cir. 1991) (citing Alyeska Pipeline, 421 U.S. at 262). The parties dispute whether section 1021.5 is an "express statutory command" authorizing attorneys' fees in this case. Petitioners filed the AB 5 litigation in California state court, seeking mandamus relief pursuant to California Code

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS(MANx) | Date | July 6, 2015 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. DAVID MAXWELL-JOLLY, ET AL. | | |

of Civil Procedure section 1085. See generally FAP. Petitioners claimed that the Medi-Cal reductions were preempted under the Supremacy Clause because they violated (1) the federal Medicaid Act and Social Security Act and (2) the federal Americans with Disabilities Act ("ADA"). Id. ¶¶ 40–59.[4] Respondents removed the action to this Court based on federal question jurisdiction, and the parties vigorously litigated the Medicaid Act preemption claim. Dkt. No. 1 ¶ 6. The Director now argues that because the claims upon which the preliminary injunctions were obtained arose under federal constitutional and statutory law, section 1021.5 does not apply in federal court.

"Eligibility for an award of attorneys' fees and costs on [California] state law claims is a matter of California law." Pearson v. Green Tree Serv., LLC, No. 13-cv-04524-JSC, 2015 WL 632457, at *2 (N.D. Cal. Feb. 13, 2015). Accordingly, federal courts have applied section 1021.5 to award fees where plaintiffs prevailed on state law claims.[5] Additionally, as movants stress, California courts have awarded fees under section 1021.5 for the vindication of rights arising under federal law. See Maria P. v. Riles, 43 Cal. 3d 1281, 1293 (1987) (awarding fees under section 1021.5 where lawsuit protected the right to confidentiality of school records "as mandated by federal law" by enjoining inconsistent state law).[6] This case, however, presents the issue of whether a

---

[4] The FAP also included a separate cause of action seeking an injunction under the ADA.

[5] See, e.g., Mangold v. Cal. Pub. Utilities Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995) (affirming award of fees under section 1021.5 where plaintiffs prevailed under both federal and California age discrimination law); Perez v. Safety-Kleen Sys., Inc., No. C 05-5338 PJH, 2010 WL 934100, at *1, 4 (N.D. Cal. Mar. 15, 2010) (awarding fees under section 1021.5 for success on California Labor Code claims); Keith v. Volpe, 644 F. Supp. 1317, 1320–21 (C.D. Cal. 1986) (applying section 1021.5 to award fees where plaintiff succeeded on state housing law claims).

[6] See also Citizens Against Rent Control v. City of Berkeley, 181 Cal. App. 3d 213, 226 (1986) (First Amendment rights); AFL-CIO v. Am. Fed'n of Labor & Emp't Dev. Dep't, 88 Cal. App. 3d 811, 821–22 (1979) (unemployed workers' right to prompt payments under the Social Security Act); Camp v. Swoap, 94 Cal. App. 3d 733, 743–47 (1979) (remanding for consideration of attorneys' fees under section 1021.5 where state

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:08-cv-03315-CAS(MANx) | Date | July 6, 2015 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. DAVID MAXWELL-JOLLY, ET AL. | | |

federal court may award fees under section 1021.5 in connection with substantive claims arising only under federal law.

"In cases within the district courts' federal-question jurisdiction, state fee-shifting statutes generally are inapplicable." 10 Fern M. Smith, Moore's Federal Practice Civil § 54.171 (2015). Nevertheless, as petitioners point out, one district court in this circuit has denied a motion to dismiss a request for attorneys' fees under section 1021.5 where the right to be vindicated arose under the federal Telephone Consumer Protection Act ("TCPA"). See In re Portfolio Recovery Assocs., LLC Tele. Consumer Protection Act Litig., No. 3:11-md-2295-JAH (BGS), 2014 WL 223557, at *3–4 (S.D. Cal. Jan. 8, 2014). That court noted that the TCPA does not itself authorize fee-shifting, and that no court had previously awarded section 1021.5 fees in a TCPA case. Id. at *3. Nevertheless, the court found "no reason to deny plaintiffs the opportunity, at this early stage of litigation, to seek such an award should plaintiffs prevail." Id. at *4. Citing some of the cases referenced above, the district court noted that California courts had "awarded attorneys' fees under section 1021.5 for the vindication of rights arising under federal law." Id. (emphasis in original).

A greater number of district courts in the Ninth Circuit, however—including two deciding a motion for attorneys' fees, as opposed to a motion to dismiss—have found section 1021.5 inapplicable to claims arising under federal law. And as explained below, the Court finds these cases to be more consistent with Supreme Court and Ninth Circuit jurisprudence on the law governing the availability of attorneys' fees for federal claims. In Klein v. City of Laguna Beach, 983 F. Supp. 2d 1162 (C.D. Cal. 2013), the plaintiff challenged municipal regulations that prohibited him from using amplified sound to communicate an anti-abortion message in certain locations. The district court awarded Klein nominal damages on his claims that those regulations violated his federal First Amendment rights, but entered judgment for the defendant city on Klein's claims under California law. Id. at 1164–65. Klein moved for attorneys' fees under section 1021.5. The court denied that motion, finding that "California's fee-shifting statute [was] inapplicable . . . because the Court dismissed all of Mr. Klein's California law claims" and the plaintiff "prevailed only on pure federal questions." Id. at 1168–69. The Klein

---

welfare regulations held incompatible with federal law).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS(MANx) | Date | July 6, 2015 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. DAVID MAXWELL-JOLLY, ET AL. | | |

court relied on the Ninth Circuit's statement that "[i]n a pure federal question case brought in federal court, federal law governs attorney fees." Id. at 1169 (quoting Disability Law Ctr. of Alaska, Inc. v. Anchorage Sch. Dist., 581 F.3d 936, 940 (9th Cir. 2009)). The district court acknowledged that Klein had "cite[d] two California court decisions that arguably applied section 1021.5 to pure federal question cases." Id. at 1169 n.7 (citing Maria P., 43 Cal. 3d at 1293, and Land v. Anderson, 55 Cal. App. 4th 69, 74 (1997)). "Regardless of whether doing so is appropriate for California courts as a matter of California law," however, the Klein court found those cases inapplicable because federal district courts "may only exercise supplemental jurisdiction over 'claims,' . . . and attorneys' fees . . . are not an independent claim, but an element of damages." Id. For these reasons, the district court refused "to apply a state fee-shifting statute to the federal law claims on which Mr. Klein ultimately prevailed." Id.[7]

In Yates v. Union Square, No. C 07-4087 JSW, 2008 WL 346418 (N.D. Cal. Feb. 7, 2008), the plaintiff brought federal ADA claims as well as related claims governed by California law. The district court declined to exercise supplemental jurisdiction over the state law claims, reasoning that they presented novel issues of California law that were better left to the state courts. Id. at *2–3. The court then struck a request for attorneys' fees under section 1021.5 even though the ADA claims were still pending, reasoning: "Because the Court has dismissed the state causes of action, the Court may not grant an award of attorneys' fees under the California provision." Id. at *4.

A similar choice of law conclusion was reached in City of San Jose v. San Jose Police Officers' Ass'n, No. 4:12-cv-02904-LHK, 2013 WL 4805453 (N.D. Cal. Sept. 9, 2013). In that case, a city sought a declaration that a voter-passed ballot measure that adversely affected public employees' pensions was legal under the Contracts Clause of the United States Constitution and other state and federal laws. Id. at *1. Some of the defendant unions, which had filed motions to dismiss on federal law grounds, were dismissed without prejudice; one of those unions then filed a motion for attorneys' fees

---

[7]Although petitioners attempt to distinguish Klein on the basis that the damages awarded in that case were "nominal," the Klein court did not mention the nominal amount of damages in its discussion of section 1021.5, and squarely held that the statute was inapplicable because the plaintiff only prevailed on federal claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS(MANx) | Date | July 6, 2015 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. DAVID MAXWELL-JOLLY, ET AL. | | |

pursuant to section 1021.5. Id. at *2. The court denied that motion, reasoning that "state law with respect to attorneys' fees applies in federal court only where state substantive law governs the underlying action." Id. (citing Champion Produce, Inc. v. Ruby Robinson Co., 342 F.3d 1016, 1024 (9th Cir. 2003). The court further explained that federal courts apply state attorneys' fee statutes when "sitting in diversity jurisdiction" or "exercising supplemental jurisdiction over state law claims," because in such cases "the federal court applies the substantive law of the state to the claim." Id. In the case before it, however, although the complaint "sought declaratory judgment that [the ballot measure] was lawful under various state laws," the federal court had not exercised supplemental jurisdiction over the state law claims. Id. at *3. "[B]ecause only federal substantive law ha[d] applied," the district court concluded that "federal attorneys' fees law—and not . . . § 1021.5" governed the motion. Id.

The weight of authority within this circuit therefore indicates that section 1021.5 is not applicable to federal law claims in federal court. That conclusion accords with the general rule that "[b]ecause established federal common law disfavors the award of attorney's fees in federal question cases absent an express congressional directive," state attorneys' fee law does not apply to claims based on federal law. Gillam, 952 F.2d at 1162 (reversing district court's application of Alaska fee statute in action arising under federal law).[8] That general rule is grounded in the principle that the Erie doctrine—the reason federal courts apply state substantive law in diversity and supplemental jurisdiction cases—applies . . . to any issue or claim which has its source in state law," but is "inapplicable to claims or issues created and governed by federal law." Maternally

---

[8]See also Modzelewski v. Resolution Trust Corp., 14 F.3d 1374, 1379 (9th Cir. 1994) ("[S]ince we address federal, not state claims, the federal common law of attorney's fees, and not Arizona law, is the relevant authority."); Disability Law Ctr., 581 F.3d at 941 (explaining that Alaska attorneys' fee law could apply "in diversity cases . . . and in federal question cases with supplemental jurisdiction over claims," but not in a pure federal question case); Evans v. Skolnik, No. 3:08-cv-00353-RCJ-VPC, 2013 WL 6197111, at *4 (D. Nev. Nov. 26, 2013) ("Federal law governs attorney's fees in federal-question cases."); Castillo v. Frito-Lay, Inc., No. C 05-5209 RJB, 2006 WL 1418868, at *1 (W.D. Wash. May 26, 2006) (finding state attorneys' fee statute inapplicable to a "federal court hearing a case on a federal question").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS(MANx) | Date | July 6, 2015 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. DAVID MAXWELL-JOLLY, ET AL. | | |

Yours v. Your Maternity Shop, 234 F.2d 538, 540 n.1 (2d Cir. 1956); see also Int'l Order of Job's Daughters v. Lindeburg & Co., 633 F.2d 912, 915 (9th Cir. 1980) ("The source of the right sued upon . . . determines whether federal or state law applies."). The rights and claims that petitioners and intervenors pressed in this litigation were created by federal law: the Supremacy Clause of the United States Constitution, and Section 30(A) of the federal Medicaid Act.[9] Therefore, federal law, not section 1021.5, governs whether attorneys' fees may be awarded. And as the instant motions cite no federal law authority for awarding attorneys' fees, the Court cannot make such an award.

Movants resist the application of federal law by stressing that some California cases suggest that petitioners and intervenors could have sought fees under section 1021 for the vindication of federal rights had this case been litigated in state court instead of being removed. But that does not change the inapplicability of state fee-shifting statutes to claims arising under federal law in federal court. See Klein, 983 F. Supp. 2d at 1168–69. The Court's conclusion on this point is reinforced by Gillam, in which the district court had applied Alaska law—which provides for routine recovery of attorneys' fees in civil cases—to an action to recover severance benefits that had been removed from state to federal court.[10] 952 F.2d at 1155–56. The Ninth Circuit reversed, explaining that the district court's "reliance on Alaska law was inappropriate because this was a federal question case and Alaska law directly conflicts with both established federal common law and Supreme Court admonitions against the award of attorney's fees

---

[9]Petitioners argue that their suit arose under California law because it sought mandamus under California Civil Procedure Code section 1085. But section 1085 is a "procedural mechanism," Kreeft v. City of Oakland, 68 Cal. App. 4th 46, 52 (1998), not a substantive claim. Moreover, it does not apply in federal court. Hill v. County of Sacramento, 466 F. App'x 577, 579 (9th Cir. 2012) ("Cal. Civ. Proc. Code § 1085 authorizes only state courts to issue writs of mandate."); Shaheen v. Cal. Supreme Court, No. C 02-5308 SI, 2002 WL 31928502, at *1 (N.D. Cal. Dec. 27, 2002) (same).

[10]The removed case was consolidated with a separate interpleader action filed in federal court by a different party, but the Ninth Circuit noted that the district court awarded "attorneys' fees for both the interpleader and [removed] severance payment actions," 952 F.2d at 1156, and reversed entirely the award of fees, id. at 1162–63.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:08-cv-03315-CAS(MANx) | Date | July 6, 2015 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. DAVID MAXWELL-JOLLY, ET AL. | | |

absent specific direction from Congress." Id. at 1163. The Ninth Circuit also noted that "Alaska has no special interest in the collection of attorneys' fees in federal question cases litigated in federal court," because a state has "no unique interest in regulating the behavior of parties in federal court or in promoting the enforcement of federal statutes with a nationwide impact." Id. at 1163 n.3.

Under Gillam's logic, it would be error to apply section 1021.5 to the federal claims litigated in this case, even if a California court potentially would have done so. Although this may produce a harsh result in the instant case, where federal courts hear federal claims, "the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those matters are for Congress to determine." Alyeska Pipeline, 421 U.S. at 262; see also Runyon v. McCrary, 427 U.S. 160, 185 (1976) ("[T]he law of the United States, but for a few well-recognized exceptions not present in these cases, has always been that absent explicit congressional authorization, attorneys' fees are not a recoverable cost of litigation."); Gillam, 952 F.2d at 1162 ("[E]stablished federal common law disfavors the award of attorney's fees in federal question cases absent an express congressional directive."); Design Pallets, Inc. v. Gray Robinson, P.A., 583 F. Supp. 2d 1282, 1286 (M.D. Fla. 2008) ("Congress has rather clearly 'occupied the field' concerning the provision of attorneys' fee awards for federal claims."). Movants' position would shift that determination to the states, and cannot be reconciled with Alyeska Pipeline and Gillam.

Movants overread the cases they cite for the broad proposition that "state law governs both a party's right to fees, as well as the method of calculating fees, in cases that are removed from state to federal court on federal question grounds." Dkt. No. 427 at 6–7. In each of the cases cited for that proposition—unlike here—the plaintiffs advanced state law claims over which the federal court exercised supplemental jurisdiction, so that the Erie doctrine mandated the application of state attorneys' fee law to those claims. For example, in MRO Communications, Inc. v. AT&T Co., 197 F.3d 1276 (9th Cir. 1999), the Ninth Circuit applied a Nevada fee-shifting statute to "state law claims within the district court's supplemental jurisdiction," because state attorneys' fee law applies "[i]n an action involving state law claims." Id. at 1278, 1282. See also Mangold, 67 F.3d at 1478 (applying state attorneys' fee law "in the context of pendent jurisdiction."); Equals Int'l, Ltd. v. Scenic Airlines, 35 F. App'x 532, 534 (9th Cir. 2002) (unpublished) ("[A]t least as to the state law claims, the state fee statute applies."); Pearson, 2015 WL 632457,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS(MANx) | Date | July 6, 2015 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. DAVID MAXWELL-JOLLY, ET AL. | | |

at *2 ("Eligibility for an award of attorneys' fees and costs on state law claims is a matter of California law."); Ozkabir v. Scotti, 906 F. Supp. 2d 188, 192 (W.D.N.Y. 2012) ("[I]n an action arising under state law, a federal court applies the law of the relevant state in determining whether to award attorney's fees."). Indeed, it is settled that federal courts apply state attorneys' fee law to pendent state law claims, Crommie v. Cal. Pub. Utilities Comm'n, 840 F. Supp. 719, 721 (N.D. Cal. 1994)—but that is not the situation presented here.[11]

Intervenors also argue that state substantive law did govern this case, citing the Ninth Circuit's holding that retroactive relief was available notwithstanding the Eleventh Amendment because, under California law, "an action seeking injunctive relief that requires a state official to disburse funds is not an action against the State." Indep. Living Ctr. of S. Cal. v. Maxwell-Jolly, 572 F.3d 644, 662–63 (9th Cir. 2009). Intervenors contend that because the scope of relief was affected by California law, it would be "incongruous" to rule section 1021.5 inapplicable on the ground that the substantive claims arise under federal law. Dkt. No. 468 at 5. The application of California law to analyze whether a state entity had waived sovereign immunity from retroactive relief, however, does not change the fact that the substantive rights on which petitioners obtained relief were purely based on federal constitutional and statutory law.

---

[11]Intervenors also cite Alyeska Pipeline for the general proposition that "a state statute requiring an award of attorneys' fees should be applied in a case removed from the state courts to the federal courts." Dkt. No. 427 at 5 (quoting Alyeska Pipeline, 421 U.S. at 259 n.31). But this language is contained in a footnote that discusses the situation "when a federal court sits in a diversity case." Alyeska Pipeline, 421 U.S. at 259 n.31 (emphasis added). That footnote cannot be read to support the application of state attorneys' fee law in every removed action, no matter the law governing the claims at issue. See Jeffrey A. Parness, Choices About Attorney Fee-Shifting Laws: Further Substance/Procedure Problems Under Erie and Elsewhere, 49 U. Pitt. L. Rev. 393, 412–13 (1988) (explaining that Alyeska Pipelines footnote 31 turned on "differentiations between federal and state law claims"); see also Gillam, 952 F.2d at 1163 (reversing application of state attorneys' fee law to action removed from state court).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS(MANx) | Date | July 6, 2015 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. DAVID MAXWELL-JOLLY, ET AL. | | |

In sum, because this case involved only federal law claims, section 1021.5 cannot support the requested attorneys' fees awards. Accordingly, the Court does not address the parties' arguments as to whether section 1021.5's requirements are satisfied, or whether the fees sought pursuant to section 1021.5 are excessive.

## IV. CONCLUSION

In accordance with the foregoing, the Court concludes that California Code of Civil Procedure section 1021.5 cannot support an award of attorneys' fees in this case. Because the motions described above (Dkt. Nos. 426, 427, and 429) cite no other basis for awarding fees, those motions are **DENIED**.

IT IS SO ORDERED.

| | 00 | : | 14 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |