# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

Present: The Honorable     CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:

Not Present

Attorneys Present for Defendants:

Not Present

**Proceedings:**     (IN CHAMBERS) - PETITIONERS' MOTION FOR ATTORNEYS' FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1021.5 (Dkt. No. [ 510 ], filed on April 10, 2019)

PETITIONERS' MOTION FOR AN AWARD OF COMMON FUND ATTORNEY'S FEES  (Dkt. No. [ 511 ], filed on April 10, 2019)

INTERVENORS' MOTION FOR ATTORNEYS' FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1021.5 AND COMMON BENEFIT THEORY (Dkt. No. [ 512 ], filed on April 10, 2019)

## I. INTRODUCTION AND BACKGROUND

Before the Court are petitioners and intervenors' motions for attorneys' fees.  The Court reviews these motions, pursuant to an order of the United States Court of Appeals for the Ninth Circuit.  See Dkt. 490.

On April 22, 2008, petitioners filed a verified petition for writ of mandamus in the Los Angeles County Superior Court, seeking mandamus under Cal. Code Civ. Proc. § 1085 and injunctive relief against respondents California Department of Health Care Services (the "Department"); Sandra Shewry, Director of the Department (the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

"Director"), and Does 1 through 50.[1]  Dkt. 1.  Petitioners' verified First Amended Petition ("FAP") was filed on May 19, 2008, also in the Superior Court.  Dkt. 6.  On May 19, 2008, respondents removed the action to this Court on the basis of federal question jurisdiction.  Dkt. 1.

The facts and procedural history of this action are known to the parties and summarized in this Court's order, dated July 6, 2015, see dkt. 476, as well as in the opinion of the Ninth Circuit, dated November 21, 2018, see dkt. 490.  For that reason, they are only briefly summarized here.

---

[1]     Petitioners are health care advocacy organizations, providers, and recipients under California's state-federal Medicaid program, known as "Medi-Cal."  Specifically, Mark Beckwith, Margaret Dowling, and Jason Young are individual Medi-Cal beneficiaries. FAP ¶¶ 7, 15–17.  Independent Living Center of Southern California ("Independent Living") is a nonprofit corporation that advocates for people with disabilities.  Id. ¶¶ 2, 18.  Gray Panthers of Sacramento and Gray Panthers of San Francisco are nonprofit corporations that advocate health care-related issues for their members, most of whom are over the age of 50.  Id. ¶¶ 3, 4, 10.  Gerald Shapiro and Sharon Steen are retail pharmacists and Medi-Cal service providers.  Id. ¶¶ 5, 6.  Tran Pharmacy, Inc. is a pharmacy and Medi-Cal service provider.  Id. ¶ 8.  Petitioners were previously represented by Lynn S. Carman ("Carman"), who is now deceased, and remain represented by the law offices of Stanley L. Friedman ("Friedman").

Intervenors Acacia Adult Day Services, Theodore M. Mazer, Ronald B. Mead, and Sacramento Family Medical Clinics, Inc. are represented by the law firm of Hooper, Lundy & Bookman, P.C. ("HLB").  On September 15, 2008, the Court granted their motion to intervene in this matter.  Dkt. 174.  On March 26, 2010, the Court also granted the motion for additional parties who were represented by HLB to intervene in this matter, including the California Hospitals Association ("CHA").  Dkt. 356.  Those additional intervenors have not moved for attorneys' fees at this time.

On June 1, 2008, petitioners dismissed the Department, leaving the Director as the only respondent.  Dkt. 12.  Since this litigation began, the Director in charge of the Department has changed multiple times.

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

On May 30, 2008, petitioners moved for a preliminary injunction to enjoin the Director from implementing California Assembly Bill X3 5 ("AB 5") on the grounds that it violated Section 30(A) of the Medicaid Act, 42 U.S.C. § 1396a(30)(A), and was therefore preempted under the Supremacy Clause. The Court heard argument on June 23, 2008. Two days later, the Court entered an order denying the motion, holding that petitioners had not demonstrated a likelihood of success on the merits of their preemption claim because they had not shown that a private claim for relief could be brought under the Supremacy Clause.

Petitioners then sought emergency relief from the Ninth Circuit. The Ninth Circuit vacated this Court's order, holding that petitioners could bring suit directly under the Supremacy Clause to enjoin a state law allegedly preempted by federal law. See Indep. Living Ctr. V. Shewry, 543 F.3d 1050 (9th Cir. 2008). The Ninth Circuit remanded the case to this court for reconsideration of petitioners' motion for a preliminary injunction.

On remand, this Court issued an order granting in part and denying in part petitioners' motion for a preliminary injunction. On August 27, 2008, the Court modified the preliminary injunction to apply only to payments "for services provided on or after August 18, 2008." The Ninth Circuit affirmed the order granting the preliminary injunction, but reversed the modification order, holding that the State of California could be held liable for reimbursement funds withheld for services provided between July 1, 2008 and August 17, 2008.

In 2011, the Supreme Court granted certiorari in the instant case, among others, and subsequently vacated the Ninth Circuit's decision because actions taken by the federal Centers for Medicare and Medicaid Services ("CMS") after the Supreme Court heard oral argument had placed the case "in a different posture." Douglas v. Indep. Living Ctr. of S. California, Inc., 565 U.S. 606, 614 (2012). The parties then entered into mediation, and on September 22, 2014, the Court granted a joint motion for approval of a settlement agreement (the "Settlement Agreement"), filed by petitioners, intervenors, and the Director. Dkt. 420.

### A.    Petitioners and Intervenors' Previous Motions for Attorneys' Fees

Petitioners and intervenors have filed motions seeking attorneys' fees at several junctures in this litigation. First, on March 15, 2010, after the Ninth Circuit ordered the Director to reimburse providers for AB 5 reductions implemented between July 1, 2008

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

and August 17, 2008, petitioners (represented by Carman and Friedman) moved to set aside one-quarter of the approximately $70 million to be reimbursed to the providers to enable these funds to be available to pay their attorneys' fees. Dkt. No. 351. Intervenors (represented by HLB) joined in the motion. Dkt. 357. The Director opposed the motion, arguing that the common fund attorneys' fees doctrine did not apply. Dkt. 354. The Director contended, *inter alia*, that petitioners brought the motion prematurely because they had not yet brought a motion for fees, id. at 4, and that the request for attorneys' fees from a common fund was a matter between petitioners and their counsel, not between petitioners and the Director, id. at 9. Petitioners argued that payment out of a common fund was proper in these circumstances, and that "if counsel are thereby deprived of this legitimate source of compensation for their services, they [] must apply to the Court under Sec. 1021.5 California Code of Civil Procedure for their fair compensation in this case—and be paid by the State instead of by the providers in respect to their services for creating this $70 million fund." Dkt. 351 at 5.

On April 9, 2010, the Court denied that motion as premature because the case had not been finally adjudicated or settled, and because neither side had provided any reason why the Court could not fashion an order at the conclusion of the case, requiring the state of California to pay attorneys' fees based on the ultimate value of any judgment or settlement. Dkt. 360 at 2. The Court further explained that setting aside funds did not appear to be in the public interest, as it would have an adverse impact on the availability of funds to ensure access to health care services for Medi-Cal patients. Id.

On April 22, 2015, once the Settlement Agreement entered into by petitioners, intervenors, and the Department was approved by CMS, petitioners and intervenors moved for attorneys' fees pursuant to Cal. Code Civil Proc. § 1021.5. Dkt. Nos. 426, 427, 429, 472. On April 23, 2015, intervenors also filed a motion to recover funds pursuant to the common benefit doctrine, only as to hospital providers who benefited from the underlying litigation. Dkt. 428. The Director opposed both motions for an award of fees under § 1021.5. Dkt. 456. One hospital, the Santa Rosa Memorial Hospital, opposed HLB's motion for fees pursuant to the common benefit doctrine. Dkt. 463.

On July 6, 2015, the Court denied an award of fees to petitioners and intervenors under § 1021.5. The Court found that because this cased involved federal claims, premised on the Supremacy Clause, § 1021.5 could not support the requested attorneys'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
| --- | --- | --- | --- |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

fees awards. <u>See generally</u> Dkt. 476. The Court did not address the parties' arguments as to whether § 1021.5's requirements were satisfied, or if the fees sought were excessive. <u>Id.</u> at 17.

HLB proceeded with mediation regarding its motion for fees pursuant to the common benefit theory, and reached a settlement on November 16, 2015. Dkt. 487. HLB received a fee award of $2,148,526, which was paid exclusively by hospital providers and hospital systems. Dkt. 512-1, Declaration of Lloyd A. Bookman ("Bookman Decl.") ¶ 6.

### B. The Ninth Circuit's Decision Regarding Attorneys' Fees

On July 24, 2015, petitioners appealed the Court's decisions to deny their motion to set aside funds out of the reimbursement payments, and the Court's order denying attorneys' fees under § 1021.5. Dkt. 478. Intervenors appealed the Courts' order denying their § 1021.5 motion on July 28, 2019. Dkt. 480.

On November 21, 2018, the Ninth Circuit held that petitioners and intervenors have brought a state-law claim, which permitted them to seek fees pursuant to § 1021.5. <u>Indep. Living Ctr. of S. Cal., Inc. v. Kent</u>, 909 F.3d 272 (9th Cir. 2018). The Ninth Circuit explained that in <u>Armstrong v. Exceptional Child Ctr., Inc.</u>, 135 S. Ct. 1378 (2015), the Supreme Court ruled that the Supremacy Clause is "not the source of any federal rights and certainly does not create a cause of action," which the Ninth Circuit previously held was the source of the claim of relief in this case, <u>see</u> <u>Armstrong</u>, 135 S. Ct. at 1383. However, petitioners and intervenors initially brought this action under Cal. Code Civ. Proc. § 1085 (the § 1085 Writ), and the Ninth Circuit concluded that "in this case the § 1085 Writ endured as a state-law claim." <u>Indep. Living</u>, 909 F.3d at 280. Notwithstanding the fact that the parties removed this case to federal court based on federal question jurisdiction, the Ninth Circuit further ruled that, because there were no independent federal claims in this case, federal common law did not govern the award of fees, and an award under state law "would not be improper." <u>Id.</u> at 282.[2] Finally, after

---

[2] The Ninth Circuit held that federal question jurisdiction was proper because the case necessarily depended on the resolution of a substantial question of federal law. <u>Indep. Living</u>, 909 F.3d at 279 (citing <u>Gunn v. Minton</u>, 568 U.S. 251, 259 (2013) ("To prevail on the § 1085 Writ, Appellants would necessarily have had to show that AB 5

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

highlighting that petitioners and intervenors obtained a preliminary injunction against the Director, the Court of Appeals concluded that, "California law appears to demonstrate Appellants are 'successful' parties under § 1021.5 and would have been entitled to move for attorneys' fees in state court." Id. at 284.

In light of its finding that petitioners and intervenors had brought a state-law claim, the Ninth Circuit remanded the case, directing this Court "to determine whether, in light of [its] ruling, Appellants meet the requirements to obtain attorneys' fees pursuant to § 1021.5 and Section III(C)(1)(a) and (b) of the Settlement Agreement." Id. at 276. The Ninth Circuit "express[ed] no opinion as to how the Settlement Agreement may affect such an award and [left] that issue to the district court to consider in the first instance on remand." Id. at 284.

The Ninth Circuit also concluded that this Court abused its discretion by denying petitioners and intervenors' motion to set aside funds when this Court amended the preliminary injunction clarifying that the injunction also applied to payments for services provided between July 1, 2008 and August 17, 2008. The Ninth Circuit explained that an award of fees from a common fund is proper where "(1) the class of beneficiaries [was] sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting," and the court held that those requirements were satisfied in this case. Id. at 285 (quoting Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 271 (9th Cir. 1989)). On this issue, the Ninth Circuit directed this Court to determine "whether it is possible and appropriate at this stage of the litigation for Independent Living to recoup attorneys' fees" pursuant to a common fund theory. Id. at 276. The Ninth Circuit

> acknowledge[ed] the potential difficulty or impossibility of reversing its denial of the set aside for attorneys' fees, given the possible disposition of the funds to the various Medi-Cal providers and that some recipient providers may not still be operating. Nevertheless, the district court is better positioned than we are to determine if any non-disbursed funds remain, or if other funds could be recouped from which to award appropriate attorneys' fees.

---

violated the requirements of Section 30(A). This purported violation was the 'central point of dispute.'").

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

Id. at 286.

Following the issuance of the Ninth Circuit's opinion, the Court held a status conference on March 11, 2019. The Court directed the Department to submit a declaration on the status of the retroactive reimbursement funds. Dkt. 498. The Court also set a briefing schedule. The Court directed the parties only to brief their entitlement to an award of attorneys' fees, without providing briefing on the actual hours billed and the reasonableness of their fees—which would be provided at a later time, as necessary.

On March 29, 2019, the Department notified the Court that it had completed making payments of the retroactive relief by the close of the 2011 fiscal year, i.e. June 30, 2011, and that the payments made pursuant to the retroactive adjustment totaled $70,211,299.39. Dkt. 506, Supplemental Declaration of Johanne Medina ("Medina Supp. Decl.") ¶ 4.[3]

On April 10, 2019, petitioners filed a motion for attorneys' fees pursuant to § 1021.5, to be paid to the law offices of Stanley L. Friedman. Dkt. No. 510 ("Fee Mot."). Petitioners also filed a motion for an award of common fund attorneys' fees and costs. Dkt. 511 ("Fund Mot."). On April 10, 2019, intervenors Acacia Adult Day Services, Theodore M. Mazer, Ronald B. Mead, and Sacramento Family Medical Clinics, Inc. filed a motion for fees to be paid to HLB, under § 1021.5 or under the common benefit doctrine. Dkt. 512 ("HLB Mot."). On May 8, 2019, the Director opposed all three motions, dkt. Nos. 518 ("Fund Opp'n"), 523 ("Fee Opp'n"), and filed objections to

---

[3]     Petitioners object to this declaration on the grounds that it includes hearsay, that it is incomplete, that it constitutes "second hand analysis devoid of any substantiating documents or other admissible evidence." Dkt. 511-2 at 1. Petitioner also argues that DHCS has not demonstrated that it complied with generally accepted accounting principles, or with the Governmental Accounting Standards Board, when it produced this information. Id. at 1–2. The Court **OVERRULES** petitioners' objections because the declaration does not include hearsay statements and the Department complied with the Court's request to update the Court regarding the availability of additional funds. The Court did not request DHCS' accounting records. While the declaration did not directly address all of the Court's questions, that is not a reason to exclude the information that was provided.

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

certain declarations filed by petitioners, dkt. 519.[4] The proponent of each motion filed a reply. Dkt. Nos. 528 ("Fee Reply"), 529 ("Fund Reply"), 530 ("HLB Reply").[5]

The Court held a hearing on June 24, 2019. After carefully considering the parties' arguments, the Court finds and concludes as follows.

## II. PETITIONERS AND INTERVENORS' MOTIONS FOR ATTORNEYS' FEES UNDER CALIFORNIA CIVIL CODE PROCEDURE § 1021.5

### A. Legal Standard

Petitioners and intervenors seek attorneys' fees pursuant to § 1021.5. This "private attorney general" statute was enacted "to encourage suits effectuating a strong public policy by awarding substantial attorneys' fees . . . to those who successfully bring such suits and thereby bring about benefits to a broad class of citizens." Woodland Hills Residents Assn., Inc. v. City Council, 23 Cal. 3d 917, 933 (1979) (internal quotation marks and brackets omitted). As the California Supreme Court held shortly after the enactment of the statute, "eligibility for section 1021.5 attorney fees is established when (1) plaintiffs' action has resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons' and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate." Conservatorship of Whitley, 50 Cal. 4th 1206, 1214 (2010) (citing Woodland Hills, 23 Cal. 3d at 933 (internal quotations omitted); see also Keith v. Volpe, 858 F.2d 467, 486

---

[4]      The Director filed a joint opposition to petitioners and intervenors' motions for fees under § 1021.5. See Dkt. 523.

[5]      In support of their reply, petitioners requested that the Court take judicial notice of four orders by the Ninth Circuit, and a copy of the Ninth Circuit's General Docket for this case. Dkt. 529-1. The Court **GRANTS** this request and takes judicial notice of the aforementioned court files and records. See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). For the same reason, the Court **GRANTS** the request to take judicial notice of the Ninth Circuit orders, and the briefing filed by the parties, which petitioners submitted in support of their other reply brief. See Dkt. 528-1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

(9th Cir. 1988) (applying these factors).[6]  The moving party bears the burden of establishing each element for a trial court to have authority to award fees under the statute.  Keep Our Mountains Quiet v. Cty. of Santa Clara, 236 Cal. App. 4th 714 (2015); County of Colusa v. Cal.Wildlife Conservation Bd. ("California Wildlife Conservation"), 145 Cal. App. 4th 637, 638 (2006).

### B.    Discussion

### 1.    Whether plaintiffs' action has resulted in the enforcement of an important right affecting the public interest

The Court first finds that petitioners and intervenors were successful parties, as contemplated by § 1021.5, whose actions resulted in the enforcement of an important right affecting the public interest.  "[T]here must be a causal connection between the plaintiffs' lawsuit and the relief obtained in order to justify a fee award under section 1021.5 to a successful party."  Maria P. v. Riles, 43 Cal. 3d 1281, 1291 (1987) (citing Westside Cmty. for Indep. Living, Inc. v. Obledo, 33 Cal. 3d 348, 353 (1983)).  However, "in assessing whether a party is a successful party, a 'broad, pragmatic view' is applied.  It is not necessary that the party seeking fees have obtained a final favorable judgment."  Cal. Wildlife Conservation Bd., 145 Cal. App. 4th at 649 (citing Graham v. DaimlerChrysler Corp., 34 Cal. 4th 553, 565 (2004), as modified (Jan. 12, 2005)).  Instead, "[t]he critical fact is the impact of the action, not the manner of its resolution . . . . [Where the other factors are met], a section 1021.5 award is not barred because the case

---

[6]    The statute specifically provides, in relevant part, that

Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

Cal. Civ. Proc. Code § 1021.5.

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

was won on a preliminary issue or because it was settled before trial." Id. (citing Folsom v. Butte County Assn. of Governments 32 Cal. 3d 668, 685, (1982)).

The Ninth Circuit held that petitioners and intervenors "here prevailed on a state-law claim by succeeding on the § 1085 Writ," and explained that "California law appears to demonstrate Appellants are 'successful' parties under § 1021.5." Indep. Living, 909 F.3d at 282, 284. The Ninth Circuit directed this Court to assess the enumerated requirements under § 1021.5, and the Court concludes that petitioners and intervenors are "successful" parties under the statute. Petitioners initiated this case in 2008 to invalidate AB 5. They successfully pursued a preliminary injunction, which was awarded in 2008. That injunction provided relief valued at approximately $290 million (i.e. the $367 million less $70 million). Intervenors provided numerous declarations and evidentiary support in that case, and HLB appeared on behalf of petitioners at the hearing on the motion for a preliminary injunction. See Dkt. 512-2, Declaration of Craig Cannizzo ("Cannizzo Decl.") ¶ 4. Intervenors then joined the action and participated in litigating the appeal, which occurred in 2009. Id. ¶¶ 5, 8–9. At that point, the Ninth Circuit affirmed and broadened the reach of the preliminary injunction—securing another $70 million in retroactive relief to be paid to Medi-Cal providers. The Supreme Court subsequently vacated the Ninth Circuit's decision, and CMS approved California's amended reimbursement rates, although it excluded the retroactive application of the rate cuts to providers represented by petitioners and intervenors. Nonetheless, the parties successfully entered into the Settlement Agreement with the Director, wherein the Director agreed to forgo efforts to recoup funds paid to Medi-Cal providers as a result of the preliminary injunctions entered in these cases. This Settlement Agreement was approved by CMS on March 24, 2015. Dkt. 426-7.

As California courts have explained,

At bottom, the inquiry [regarding whether a party is successful] is an intensely factual, pragmatic one that frequently requires courts to go outside the merits of the precise underlying dispute and *focus on the condition that the fee claimant sought to change*. Using that condition as a benchmark, the court asks if the outcome of the litigation is one to which the fee claimant's efforts contributed in a significant way, and which does involve an actual conferral of benefit or relief from burden when measured against the benchmark condition.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
|----------|------------------------|------|----------------|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

<u>Cal. Wildlife Conservation</u>, 145 Cal. App. 4th at 651 (emphasis added) (internal quotations omitted).  Here, petitioners and intervenors successfully resolved the condition they sought to change by preventing reductions in medical payments totaling hundreds of millions of dollars which helped ensure access to health care for Medi-Cal patients. Thus, the Court concludes that "the fee claimant's efforts contributed in a significant way," which demonstrates that they were a "successful" party under § 1021.5.

This action also resulted in the enforcement of an important right affecting the public interest.  "It is the duty of the trial court, exercising 'its traditional equitable discretion . . . [to] realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory." <u>Bui v. Nguyen</u>, 230 Cal. App. 4th 1357, 1366 (2014) (quoting <u>Woodland Hills</u>, 23 Cal. 3d at 938).  "The important right need not be constitutional in origin.  Section 1021.5 applies also to statutory rights as well as important public policies." <u>Angelheart v. City of Burbank</u>, 232 Cal. App. 3d 460, 467 (Ct. App. 1991) (quoting <u>Cal. Common Cause v. Duffy</u>, 200 Cal. App. 3d 730, 745 (1987)) (internal citations omitted).  When determining whether a party enforced an important right, the California Supreme Court has directed courts to "realistically assess the significance of that right in terms of its relationship to the achievement of fundamental legislative goals." <u>Choi v. Orange Cty. Great Park Corp.</u>, 175 Cal. App. 4th 524, 531 (2009) (quoting <u>Woodland Hills</u>, 23 Cal.3d at 936); <u>see also</u> <u>Cal. Wildlife Conservation</u>, 145 Cal. App. 4th at 654 (finding that the plaintiff had enforced an important right where it "significantly promoted the Williamson Act's legislative goals of allowing local governmental input and control over the preservation of agricultural land and open spaces").

The Director argues that the "important right requirement," imposed by § 1021.5, has not been met because Friedman and HLB "do not identify any 'right' their actions successfully enforced, much less one that qualifies as an 'important' right that affects the 'public interest.'  Rather, the providers on whose behalf they pursued this action sought to protect their personal economic interests by reversing reductions to their Medi-Cal payments." Opp'n at 4.  The Director further contends that, in this case, there was no individual "right" that either Medi-Cal recipients or providers could enforce because Section 30(A) does not provide a private cause of action, and the Supreme Court has now held that the Supremacy Clause similarly is not the "source of any federal rights." <u>Id.</u> at 4–5 (quoting <u>Armstrong</u>, 135 S. Ct at 1383); <u>see also</u> <u>Sanchez v. Johnson</u>, 416 F.3d 1051,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. |

1059 (9th Cir. 2005) (holding that Section 30(a) does not provide a private remedy for a violation).[7]

However, the reach of Section 1021.5 is not as limited as the Director contends, because "[t]he important right need not be constitutional in origin" but "applies also to statutory rights as well as important public policies." Angelheart, 232 Cal. App. 3d at 467. Courts determine significance by assessing the right's "relationship to the achievement of fundamental legislative goals." Choi, 175 Cal. App. 4th at 531. By its express terms, the purpose of Section 30(A) is "to enlist enough providers so that care and services are available under the plan"—i.e. to provide adequate access to health care. 42 U.S.C.A. § 1396a (West). Thus, as explained by courts, "the legislative intent of [Medicaid and Medi-Cal] was to provide 'mainstream' medical care to the indigent. In effect, this meant that poorer people could have access to a private practitioner of their choice, and not be relegated to a county hospital program." Cal. Med. Assn. v. Brian, 30 Cal. App. 3d 637, 642 (Ct. App. 1973). This litigation addressed this federal policy—this "fundamental legislative goal"— by successfully demonstrating that the rate reductions at issue would force providers to cease offering certain health care services to Medi-Cal patients, thereby limiting options for Medi-Cal patients. This action therefore "served to enforce the spirit of the [federal] goals" of the Medicaid Act. Cal. Wildlife Conservation, 145 Cal. App. 4th at 652.

In addition, although the Supreme Court has now determined that Section 30(a) does not provide a private cause of action to Medi-Cal patients, multiple courts have found that beneficiaries have "a constitutionally protected property interest in Medicaid benefits." Lewis v. Rendell, 501 F. Supp. 2d 671, 692 (E.D. Pa. 2007); see also Jonathan C. v. Hawkins, No. CIV A 9:05-CV-43, 2006 WL 3498494, at *12 (E.D. Tex. Dec. 5, 2006). Accordingly, because petitioners and intervenors litigated this action to ensure access to health care, they enforced the important property interests of California's Medi-Cal beneficiaries—further demonstrating that the "important right" requirement is met.

---

[7]     The Director further notes that, in October 2011, CMS found that the rate reductions did not violate the requirements of Section 30(A), including the equality of access provision. Opp'n at 6.

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

> **2.**      **Whether a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons**

To determine whether a "significant benefit" has been conferred on the general public or a large class of persons, "[t]he trial court must determine the significance of the benefit and the size of the class receiving that benefit by realistically assessing the gains that have resulted in a particular case." Baxter v. Salutary Sportsclubs, Inc., 122 Cal. App. 4th 941, 945 (2004) (quoting Flannery v. California Highway Patrol, 61 Cal. App. 4th 629, 635 (1998)); see also Graham, 34 Cal. 4th at 578 ("[S]ection 1021.5 requires both a finding of a significant benefit conferred on a substantial number of people and a determination that the 'subject matter of the action implicated the public interest.'") (internal citations omitted). Thus, "the statute directs the judiciary to exercise judgment in attempting to ascertain the 'strength' or 'societal importance' of the right involved." Choi, 175 Cal. App. 4th at 531. "The 'significant benefit' that will justify an attorney fee award [under section 1021.5] need not represent a 'tangible' asset or a 'concrete' gain but, in some cases, may be recognized simply from the effectuation of a fundamental constitutional or statutory policy." Keep Our Mountains Quiet, 236 Cal. App. 4th at 737 (quoting Woodland Hills, 23 Cal. 3d at 939). In addition, the parties need not always present evidence as to the specific size of the population that benefited from the action. See Planned Parenthood v. Aakhus, 14 Cal. App. 4th 162, 171 (1993).

The Director does not appear to argue that petitioners and intervenors failed to confer a significant benefit on the general public, and the Court finds that this element is met. As petitioners and intervenors argue, "[t]he funds retained by these actions benefitted countless millions of Medi-Cal enrollees and more than one hundred thousand Medi-Cal providers." HLB Mot. at 19. This Court and the Ninth Circuit have previously found that an injunction against the Director was necessary to prevent irreparable injury to millions of Californians who relied on Medi-Cal services. Dkt. 121 at 11–20; Indep. Living Ctr. of S. California, Inc. v. Maxwell-Jolly, 572 F.3d 644, 658 (9th Cir. 2009), vacated and remanded sub nom. Douglas v. Indep. Living Ctr. of S. California, Inc. ("Indep. Living II"), 565 U.S. 606 (2012); see also Beltran v. Myers, 677 F.2d 1317, 1322 (9th Cir. 1982) (concluding that "plaintiffs have shown a risk of irreparable injury, since enforcement of the California rule may deny them needed medical care" in an unrelated case pertaining to a rule on eligibility for Medi-Cal). Although the decision was later vacated by the Supreme Court in light off action taken by CMS, the Court still

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

concludes that "there is a robust public interest in safeguarding access to health care for those eligible for Medicaid, whom Congress has recognized as 'the most needy in the country.'" Indep. Living II, 572 F.3d at 659 (quoting Schweiker v. Hogan, 457 U.S. 569, 590 (1982) (quoting H. R. Rep. No. 213 89th Conf. 1st Sess., 66 (1965)). Accordingly, the second requirement under Section 1021.5 has been met.

### 3. Whether the necessity and financial burden of private enforcement are such as to make the award appropriate

The third element under § 1021.5 "involves two issues: whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys." Bui, 230 Cal. App. 4th at 1365 (citing Conservatorship of Whitley, 50 Cal. 4th at 1214) (internal quotations omitted).

### a. Whether private enforcement was necessary

"The necessity of private enforcement looks to the adequacy of public enforcement and seeks economic equalization of representation in cases where private enforcement is necessary." Conservatorship of Whitley, 50 Cal. 4th at 1215. "Where the litigation proceeds against the only agency that would bear the responsibility of complying with the constitutional or statutory right being asserted, necessity of private enforcement is manifest." Bui, 230 Cal. App. 4th at 1366–67 (citing Woodland Hills, 23 Cal.3d at 941). "On the other hand, the award of attorney fees is not appropriate when the public rights in question were adequately vindicated by governmental action." Conservatorship of Whitley, 50 Cal. 4th at 1215.

The Director primarily argues that petitioners and intervenors cannot demonstrate that private enforcement was necessary because CMS has "exclusive oversight and enforcement authority over compliance with Section 30(A)'s requirements," and petitioners filed this lawsuit before CMS had reviewed AB 5. Opp'n at 21. The Court disagrees with the Director's position. Although CMS has exclusive oversight and enforcement authority over compliance with Section 30(A), the question for the purposes of § 1021.5 is whether public enforcement was "adequate." Accordingly, even where a public official or agency may be officially *appointed* to enforce a right, the necessity of private enforcement element will still be met if that agency does not act. See Planned Parenthood, 14 Cal. App. 4th at 173 (finding that the private enforcement was necessary because the district attorney refused to prosecute appellants without respondent first

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

obtaining a State court injunction); see also Robinson v. City of Chowchilla, 202 Cal. App. 4th 382, 401 (2011) (concluding that the private enforcement requirement was met because private enforcement was the only "realistic" option when the attorney general's office was not involved, and the associated governmental entity did not take responsibility).

In this case, DHCS imposed the rate reduction in 2008, and DHCS did not submit rates for CMS's consideration until after the rates had been enforced and after this lawsuit was initiated. Two years later, in 2010, CMS initially responded, disapproving of the rates—but at that point, the preliminary injunction was already in place. In 2012, CMS changed its position, but did not address the rates at issue in this specific litigation. The Court thus finds that here, where the very state agency that was tasked with complying with Section 30(A)'s requirements caused the alleged harm, and where CMS failed to respond in a timely manner, the "necessity of private enforcement is manifest." Bui, 230 Cal. App. 4th at 1366–67.

> **b.    Whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys**

The burden prong "focuses on the financial burdens and incentives involved in bringing the lawsuit." Press v. Lucky Stores, Inc., 34 Cal. 3d 311, 321 (1983). "Section 1021.5 was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest." Davis v. Farmers Ins. Exch., 245 Cal. App. 4th 1302, 1329 (2016), as modified on denial of reh'g (Apr. 21, 2016) (quoting Beach Colony II v. Cal. Coastal Com., 166 Cal. App. 3d 106, 114 (1985)). Accordingly, attorneys' fees are appropriate only when the cost of the litigation is objectively out of proportion to the litigant's personal financial stake, regardless of the party's subjective reasons for bringing the lawsuit. Conservatorship of Whitley, 50 Cal. 4th at 1215, 1220-21. "What is required is a showing [that] 'the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff' out of proportion to his individual stake in the matter." Beach Colony II, 166 Cal. App. 3d at 113 (quoting Woodland Hills, 23 Cal. 3d at 941).

In analyzing this burden, the court must compare the "value of the case at the time the vital litigation decisions were being made" to the actual costs of the litigation. Id. at 1215 (quoting Los Angeles Police Protective League v. City of Los Angeles ("LAPPL"),

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

188 Cal. App. 3d 1, 10 (1986)).  An award of attorneys' fees "will be appropriate except where the expected value of the litigant's own monetary award exceeds by a substantial margin the actual litigation costs." LAPPL, 188 Cal. App. 3d at 10.  The value of the monetary award must include all financial benefits the litigant could receive regardless of whether it would be received as damages or equitable relief.  See Children & Families Com. of Fresno Cty. v. Brown, 228 Cal. App. 4th 45, 60 (2014) (including the value of equitable relief because it provided the litigant with a pecuniary benefit even though the litigant received no money damages).  The value of the case is determined by "discounting the monetary value of the benefits that the successful litigant reasonably expected at the time the vital litigation decisions were made by the probability of success at that time."  Collins v. City of Los Angeles, 205 Cal. App. 4th 140, 155 (2012).  The Court must therefore examine three variables: (1) the value of the expected monetary benefits of successful litigation, (2) the probability of success, and (3) the actual litigation costs.

Noting that the estimated recovery in this case implicated hundreds of millions of dollars, if not billions of dollars, the Director argues that "even if the potential recovery for providers may be reduced to take into account litigation risk, their financial interest in the action overwhelmingly transcended even their attorneys' unsupportable and excessive claimed litigation costs."  Fee Opp'n at 9.  The Director also argues that the parties have presented insufficient evidence pertaining to their expected recovery at the times when critical legal decisions were made, which prevents the Court from conducting the appropriate "financial burden" analysis.  Id. at 10–11 (citing Covenant Media of Cal. V. City of Huntington Park, 434 F. Supp. 2d 785, 787 (2006)).

The evidence submitted in support of the motions shows that the costs of this litigation transcended the individual financial incentives of the named petitioners and intervenors to bring this suit.  For this reason, the Court denies the Director's request to take additional discovery on this issue.  Friedman estimates that the total fees and costs incurred by his firm in litigating this matter amount to $4.9 million, and that he represents that he has only received $55,000 in payment, from the Medicaid Defense Fund in 2008.  Dkt. 510-2, Declaration of Stanley Friedman ("Friedman Decl.) ¶¶ 89, 104.[8]  HLB

---

[8]     The Director has filed an objection to the Friedman Declaration, arguing that "almost the entirety" of the Friedman Declaration should be stricken because it includes

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

estimates that its total fees and costs amount to $3.8 million. Mot. at 23.[9] At this time, the Court does not assess, nor makes any findings, regarding the reasonableness of the

---

improper legal argument, in an attempt to circumvent the page limitation for petitioners' memoranda. Dkt. 519 at 2–3. Petitioners have responded to the objections. Dkt. 529-4.

As the Director notes, legal argument is reserved for the moving papers, and should not be inserted into declarations. See King Cty. v. Rasmussen, 299 F.3d 1077, 1082 (9th Cir. 2002) ("Declarations, which are supposed to 'set forth facts as would be admissible in evidence,' should not be used to make an end-run around the page limitations of [Local Rule 11-6] by including legal arguments outside of the briefs."). The Court has reviewed the Friedman Declaration, and notes that it contains numerous instances of legal argument. See, e.g., Friedman Decl. ¶¶ 77–86, 91–93, 95, 101 (discussing the standard for determining whether the requirements of § 1021.5 are met). At other times, Friedman sets forth factual matters. See, e.g., id. ¶¶ 4–5, 9–30 (presenting the procedural history in this case). The Director does not object to paragraphs 89 or 104, which are cited above, and the Court finds this evidence to be admissible. Otherwise, to the extent the Friedman Declaration contains legal arguments or statements beyond the declarant's personal knowledge, the Director's objections are **SUSTAINED.** To the extent that it contains information about which Friedman has personal knowledge, the Director's objections are **OVERRULED**. See Anhing Corp. v. Thuan Phong Co. Ltd., 215 F. Supp. 3d 919, 928 (C.D. Cal. 2015) (striking only the improper portions of a declaration).

[9] HLB also incurred an additional $1,238,100 in uncompensated recorded time, calculated at the firm's standard billing rates, in separate legal proceedings involving institutional providers' challenges to Medi-Cal rate reductions during 2008-2009. Cannizzo Decl. ¶ 18. In addition, and as noted, in 2016 following mediation HLB received $2,148,526 in payment from the hospital parties it represented, in addition to the $173,428 that it received under its original fee agreement with the hospital providers. See Bookman Decl. ¶¶ 2–6 (explaining that HLB filed two different fees motions filed in 2015, seeking fees under different theories for its hospital clients as opposed to non-hospital providers); Cannizzo Decl. ¶ 18. At this time, the Court reserves ruling on whether these payments should constitute offsets for any fees awarded under § 1021.5. In subsequent briefing on the amount of attorneys' fees that should be awarded in this case, HLB will produce a more detailed accounting which will permit the Court to determine whether the fee award under § 1021.5 should be decreased in light of payments

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

parties' fees, but merely considers the amount of these claimed fees for the purposes of the financial burden analysis. During this litigation, the parties have presented varied opinions on the estimated value of the funds secured for Medi-Cal payments, ranging from $367 million, HLB Mot. at 1, to $3 billion when the federal government's matching funds are considered, Fee Mot. at 5–6. The parties agree, however, that these funds were paid to hundreds of thousands of Medi-Cal providers in order to subsidize treatment for millions of Californians who depend on Medi-Cal.

The financial burden imposed on the petitioners and the intervenors thus differ in this case, and the Court distinguishes between them on this prong. First, the petitioner patients who brought this suit never had a financial incentive in bringing this suit; their individual stake can only be categorized as access to health care. Therefore, for them, the financial burden requirement has been met.

For the individual providers who were represented by Friedman and HLB, the analysis differs, but the outcome still demonstrates that individual stakes were relatively low in comparison to the costs of the litigation. HLB asserts that the named intervenors estimated that they would have incurred losses due to the rate reductions in question ranging from $394 to $140,000. HLB Reply at 11–12; see Dkt. 370-10; Dkt. 370-12. Accordingly, even without discounting the parties' expected returns, based on the litigants' perceived probability of success in this lawsuit, it appears that no petitioner or intervenor's financial interest could cover the costs of this decade-long, complex litigation. See City of Sacramento v. Drew, 207 Cal. App. 3d 1287, 1305 (Ct. App. 1989), reh'g denied and opinion modified (Mar. 15, 1989) (finding, in 1989, that an individual stake of $920 could not "by the wildest flight of fancy be viewed as other than grossly disproportionate to the litigation costs").

Importantly, too, in light of the numerous appeals in this litigation, at the time that vital litigation decisions were made, the Court concludes that the success was always in doubt—which indicates that these figures should be discounted. Demonstrative of this fact, although HLB initially represented a number of industry trade associations pursuant to a fee engagement, those associations decided, in November 2009, that they were unwilling to continue supporting the litigation "in light of the increasingly protracted

---

that HLB has already received in related actions. The Court will make the same determination with regard to payments made to Friedman.

| **CIVIL MINUTES – GENERAL** | | **'O'** | |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

nature of the litigation." Cannizzo Decl. ¶ 17. At that time, they had incurred $173,428 in attorneys' fees. Id.; Reply at 14. HLB decided to bear the burden of continuing the litigation, while reserving its right to seek an award of attorneys' fees under any applicable legal theory at a later date. HLB Mot. at 22–23. This ultimately required HLB to incur $3.63 million in estimated fees ($3,803,840 minus $173,428). Id.

The Director resists the conclusion that individual providers were not individually incentivized to bring this lawsuit, and it argues that some, unidentified individual providers, benefited greatly from this litigation—receiving multiple millions of dollars because of the injunction against AB 5. See Opp'n at 16–17 (explaining, for example, that one pharmacy received an estimated $5.5 million because of the injunction against AB 5, and that one health center received an estimated $2.76 million). While the Director does not identify these entities, nor explain their relationship to this lawsuit, the Director contends that they demonstrate that individual providers had "substantial monetary stakes in this action," which foreclose an award of fees under § 1021.5. Id. at 17. Citing Torres v. City of Montebello, 234 Cal. App. 4th 382 (2015), the Director further suggests, without any evidentiary support, that individuals with significant financial interests may have improperly hidden behind less financially-interested parties to "obscure their financial interest in the litigation." Fee Opp'n at 13. In Torres, the California Court of Appeals affirmed a decision to deny an award of fees under § 1021.5 where the plaintiff only brought his case because a financially-invested business entity agreed to pay for the litigation. See Torres, 234 Cal. App. 4th at 407. The Director further argues that, to the extent that associations are supporting this lawsuit, their financial stakes are the same as their members. Fee Opp'n at 15 (citing Cal. Licensed Foresters Assn. v. State Bd. of Forestry, 30 Cal. App. 4th 562 (1994), as modified on denial of reh'g (Dec. 20, 1994)). Finally, at oral argument, the Director also suggested that the Court should look at the interests of non-represented parties because petitioners and intervenors could have represented individuals with more sizeable financial interests, who therefore could have paid attorneys' fees. Tr. 06/24/19, 5:2–10 ("And there's no reason on earth why petitioners could not also have represented provider groups or some of the individual providers that had their own financial incentive to pursue this litigation.").

This case is distinguishable from the cases cited by the Director because the evidence does not indicate that petitioners or intervenors brought this case at the behest, or with the financial backing, of financially-interested entities. In addition, none of the

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

parties that currently seek fees are associations that represent the interests of financially-interested members. More to the point, although the Director suggests that some potential third-party beneficiaries may have benefited from this litigation, she does not link the unidentified providers she discusses to the parties in this litigation. For these reasons, the Court declines to permit discovery on this issue. See Save Open Space Santa Monica Mountains v. Superior Court, 84 Cal. App. 4th 235, 250 (2000), disapproved of on other grounds by Williams v. Superior Court, 3 Cal. 5th 531 (2017) (holding that a court should only permit discovery on the possibility of hidden litigants where the party opposing a § 1021.5 attorney's fee award has produced evidence indicating that a public interest organization is litigating an action primarily for the benefit of nonlitigants).[10]

The Director also cites no authority which supports the proposition that, because a non-party stands to benefit financially from a lawsuit, individuals with little to no comparative financial stake in the outcome, and who pursue a lawsuit because it furthers the public interest, are barred from the recovery of attorneys' fees when. Such an argument is particularly inappropriate here, where the financially-invested associations who HLB initially represented pursuant to a fee engagement decided to cease litigating the matter because the litigation had become too "protracted." Cannizzo Decl. ¶ 17. Similarly, contrary to the Director's arguments at oral argument, public interest litigants are not required to seek out the participation of financially-able partners; such a rule would create undue conflicts in public interest actions, and would severely hinder the abilities of financially-impaired individuals to bring valuable lawsuits.

The Court also notes that where individual financial interests are closely aligned with the public's interests, California courts have found that fees can be properly awarded under § 1021.5 even where the litigant's financial stake is meaningful. For example, in Planned Parenthood v. Aakhus, 14 Cal. App. 4th 162 (1993), the Court concluded that Planned Parenthood had a "a sufficient business motive to wage this suit." Id. at 173. Nonetheless, the Court concluded that the lawsuit should not "be interpreted solely as a

---

[10]     At oral argument, counsel for the Director argued that the letter, dated November 4, 2009, from HLB to the hospital associations in which HLB agreed to continue litigating this action on a contingency fee demonstrates the involvement of financially-abled litigants. See Tr. 06/24/2019, 32:5–9 (citing Cannizzo Decl., Ex B). The Court disagrees. That letter demonstrates that financially-able litigants were unwilling to continue supporting this litigation, in light of their perceived benefits.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

private success story" because Planned Parenthood's business interests were inextricably intertwined with its mission to its clients:

> The interests of respondent and its clients, rendering and receiving reproductive medical care, are mutual and inseparable. This action was brought to protect both respondent and its patrons; consequently, it cannot be exclusively characterized as a self-serving, private dispute commenced by respondent to protect its own pocketbook.

Id.

In this litigation, Friedman, along with the late Lynn Carman, represented individuals who depended on Medi-Cal to provide them life-saving medical care, as well as non-profit organizations and pharmacies who serve individuals who depend on Medi-Cal. See FAP ¶¶ 2–8, 15–17. For the purposes of this motion, HLB represented individual providers—a professional corporation owned and operated by a physician, an individual physician, two hospitals, a dentist, and an adult day health care center—who were dependent on Medi-Cal payments in order to provide services to Medi-Cal patients. Dkt. 152 at 2. Since the beginning of this litigation, petitioners and intervenors have argued that the reductions to provider payments imposed by AB 5 would prevent providers from continuing to provide services to Medi-Cal patients. For example, when they filed their complaint, petitioners alleged that, "due to already too-late rates paid physicians, dentists, pharmacies, and other providers by Medi-Cal," the additional reduction would drive out existing providers, such that "many Medi-Cal recipients . . . will be denied life-sustaining medical, dental, and prescription services, with [] the consequence that Medi-Cal recipients in general will be denied quality medical services and access to quality medical services." FAP ¶ 39. When intervenors moved to intervene in this matter, they argued "[s]hould [the Director] prevail in this case, the Ten Percent Rate Reduction will stand and Proposed Intervenors will be faced with Medi-Cal payment rates too low to allow them to continue to treat Medi-Cal beneficiaries at all or treat Medi-Cal beneficiaries on the same scale as they are now." Dkt. 152 at 9.

Accordingly, the focus of this litigation has been the access to healthcare for the State's neediest patients. Indeed, and as discussed above, when this Court granted, and the Ninth Circuit affirmed, petitioners' motion for a preliminary injunction, the Court found that the irreparable injury requirement was met in light of Medi-Cal patients'

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

reduced access to medical care and pharmaceuticals.  See Dkt. 121 at 11–20; Indep. Living II, 572 F.3d at 658.  While providers benefited from the injunction and Settlement Agreement in as much as they continued to receive funding sufficient to permit them to serve Medi-Cal patients, the evidence put before this Court indicated that those payments were necessary to adequately cover providers' costs.  The Court thus finds that, here, where the funds received ensured access to health care, the interests of the providers and their patients were "mutual and inseparable."  Planned Parenthood, 14 Cal. App. 4th at 173.

### 4.      Whether the Interests of Justice Support Awarding Attorneys' Fees Out of the Recovery

The final consideration, under § 1021.5, is whether "fees should not in the interest of justice be paid out of the recovery, if any."  Cal. Civ. Proc. Code § 1021.5.  This element is only evaluated when there was a monetary recovery.  Baggett v. Gates, 32 Cal. 3d 128, 142 n.17 (1982).  The interests of justice inquiry requires a value judgment as to the desirability of offering the bounty of an award of attorneys' fees to encourage similar litigation, and in some circumstances this analysis may encompass parts of the "financial burden of private enforcement" inquiry.  Collins, 205 Cal. App. 4th at 157.

Although this factor is usually considered together with the financial burden analysis, the Court reviews it separately due to the unique facts of this case.  Specifically, petitioners and intervenors previously moved to set aside funds from the recovery in this matter, under a common fund theory.  Dkt. 351.  They argued that, if their motion were denied, "they [] must apply to the Court under Sec. 1021.5 California Code of Civil Procedure for their fair compensation in this case."  Id. at 8.  The Director opposed petitioners and intervenors' motion to set aside a fund, notwithstanding the fact that such a fund would not cost the State additional outlays.  Dkt. 354.  The Director also argued that petitioners and intervenors did not satisfy the requirements for a common fund.  Id. This Court denied the motion because it found that fees should not be paid out of the funds which were paid to providers to ensure Medi-Cal beneficiaries' access to health care.  Dkt. 360 at 2.  The Court also indicated that it could determine, at the end of the case, whether petitioners and intervenors were entitled to attorneys' fees from the State. Id.  On appeal, the Ninth Circuit found that the Court abused its discretion when it declined to set aside a portion of these funds to potentially pay for attorneys' fees and concluded that petitioners had satisfied the requirements for an award of fees from a common fund.

**CIVIL MINUTES – GENERAL**      **'O'**

| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. |

However, nine years have passed since the Court denied petitioners and intervenors' motion, and the Director now represents that all the funds recovered as a result of this litigation have been disbursed to the Medi-Cal providers who have provided health services. Medina Supp. Decl. ¶ 4. In addition, the Ninth Circuit recognized that it would be difficult if not impossible to recoup those payments from future reimbursement amounts, given that some of the persons who received payments might not now be providing reimbursable services. Indep. Living, 909 F.3d at 286. The Director also represents that, under the terms of the Settlement Agreement entered into by the parties, DHCS cannot be required to incur the expense of seeking to recoup any funds that have already been distributed or to deduct these amounts from future payments. See Dkt. 518 at 11–12; see Section III(A).

Accordingly, at this time, there is no fund from which to pay fees. Furthermore, the Court finds that the "interests of justice" support an award under § 1021.5 because "it is desirable to offer the bounty of a court-awarded fee in order to encourage litigation of the sort involved in this case." Collins, 205 Cal. App. 4th at 155. This case, which recovered and preserved hundreds of millions of dollars to support access to health care, is precisely the "sort" of public interest litigation that Section 1021.5 intends to encourage. Woodland Hills, 23 Cal. 3d at 933.

\*      \*      \*      \*      \*

In sum, the Court finds that petitioners and intervenors have demonstrated that "plaintiffs' action has resulted in the enforcement of an important right affecting the public interest," that "a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons," and that private enforcement was necessary. Conservatorship of Whitley, 50 Cal. 4th at 1214. The Court also finds that the interests of justice indicate that a fee award should not be paid out of the recovery. Petitioners and intervenors have also demonstrated that the financial burden, imposed by this litigation, warrants an award of fees under § 1021.5. Finally, the Court notes that nothing in the Settlement Agreement bars recovery under § 1021.5, if the statutory requirements are met.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

## III. PETITIONERS' MOTION FOR ATTORNEY'S FEES PURSUANT TO A COMMON FUND THEORY

When petitioners appealed their motion to set aside funds, they stated in their briefing to the Ninth Circuit, "should Petitioner's counsel not prevail in this appeal in regard to the denial of motion for attorneys' fees pursuant to California Code of Civil Procedure Section 1021.5, a separate means exists by which attorneys' fees may be awarded"—namely pursuant to a common fund theory. See Dkt. 528-1, Ex. B at 11. On remand, petitioners argue that an award of attorneys' fees pursuant to a common fund theory is appropriate and possible. Notwithstanding the fact that the funds have been distributed to the providers, petitioners contend that the Court has never lost jurisdiction over the fund. Moreover, petitioners argue that the Court may "reinstate the status quo even after the funds have been disbursed," thereby recouping funds from providers or fractionally reducing future payments to Medi-Cal providers from which counsel for petitioners may be awarded fees. Fund Mot. at 4; Fund Reply at 17.[11] Petitioners assert that the Settlement Agreement presents no obstacle to such an award, and they contend that their ability to pursue fees pursuant to a common fund theory is not time-barred. Finally, plaintiffs argue that the Court has discretion to determine whether it should award fees pursuant to § 1021.5 or a common fund theory. Mot. at 19.

In response, the Director argues that an award of fees pursuant to a common fund theory is barred by the Settlement Agreement in two ways. First, the Director argues that petitioners' motion for an award under a common fund theory is time-barred and therefore waived because the Settlement Agreement required the parties to file motions for attorneys' fees within thirty days of the Settlement Effective Date. Fund Opp'n at 8–11. At that time, in April 2015, counsel for petitioners filed only their motion for fees under § 1021.5. Once the Court denied that motion, counsel for petitioner appealed that order and the Court's 2010 order wherein the Court denied petitioners' request to set aside funds for the creation of common fund. Dkt. 478. However, because petitioners failed to file a motion for fees under the common fund doctrine in April 2015, the Director argues that petitioners cannot now pursue such a theory. Second, the Director

---

[11]     Petitioners initially argued that DHCS itself should be required to pay petitioners a percentage of the common fund because the Director "gamed the system, sucker punched and whipsawed Petitioners." Mot. at 16. However, in their reply brief, petitioners assert that they do not request the Director to directly pay common fund attorneys' fees; rather, they request the Director to recoup the funds from the beneficiaries. Reply at 8.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

argues that the funds have all been disbursed, and under the Settlement Agreement, that she and any state agency possess a right to refuse any common fund fee arrangement which would require it "to pay or assist in obtaining the purported common fund recovery." Fund Opp'n at 13 (citing Dkt. 417-2, Ex. A ("SA") Section III(C)(1)(c)). Because there is not a fund currently in existence, the Director also argues that a common fund theory "cannot be applied here." Fund Opp'n at 15.

An award of fees from a common fund is proper where "(1) the class of beneficiaries [was] sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting," and the Ninth Circuit held that those requirements are satisfied in this case. Indep. Living, 909 F.3d at 285 (quoting Paul, Johnson, Alston & Hunt, 886 F.2d at 271). However, the Court of Appeals directed this Court to determine "whether it is possible and appropriate at this stage of the litigation for Independent Living to recoup attorneys' fees" pursuant to a common fund theory. Id. at 276. The Ninth Circuit specifically directed this Court to determine whether any non-disbursed funds remained, whether other funds could be recovered to award appropriate attorneys' fees, and whether the Settlement Agreement had any effects on the availability for fees under a common fund theory. Id. at 286. The Court of Appeals also "acknowledge[ed] the potential difficulty or impossibility of reversing its denial of the set aside for attorneys' fees, given the possible disposition of the funds to the various Medi-Cal providers and that some recipient providers may not still be operating." Id.

## A.     Utilizing the State to Recreate the Common Fund

After the Court requested that DHCS investigate the potential availability of funds, DHCS responded that all funds had been paid as of 2011. Medina Supp. Decl. ¶ 4 However, petitioners are correct that the mere fact that a physical fund was not created does not foreclose an award of attorneys' fees under a common fund theory. See Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 167 (1939) ("[W]hen such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation—the absence of an avowed class suit or the creation of a fund, as it were, through stare decisis rather than through a decree—hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation."). In addition, the Court concludes that petitioners' motion is not time-barred. The Settlement Agreement required counsel for plaintiffs to file motions for attorneys' fees within thirty days of the Settlement Agreement's Effective Date. SA Section III(C)(1)(c). Counsel for petitioners filed a motion for fees

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:08-cv-03315-CAS-MANx | | Date | August 6, 2019 |
|---|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | | |

pursuant to § 1021.5, but did not file a motion for fees under a common fund theory. However, petitioners filed their motion to set aside funds in 2010, and the Court concludes that their right to bring a related motion for an award under a common fund theory was effectively reserved until the Ninth Circuit ruled on the appeal.

Yet while the Court finds that petitioners' request for fees under the common fund doctrine is not time-barred, the Court concludes that such an award is neither "possible" nor "appropriate" at this juncture. Indep. Living, 909 F.3d at 276. The funds which petitioners secured have been distributed to Medi-Cal providers pursuant to Court orders. While petitioners contend that this Court may "reinstate the status quo" because the Court has retained jurisdiction over the fund, the Court disagrees. To recoup the funds which have already been paid to the health care providers, or to recoup funds by decreasing future payments to those providers, would require the Department to alter its internal practices and incur costs. Under the Settlement Agreement, the parties agreed that an application for attorneys' fees under the "'common benefit' theory . . . or any other theory for services performed" must "seek payment exclusively and directly from any Medicaid providers that purportedly obtained a benefit from counsel's work," and must "not assert any argument that would require DHCS or any other state agency to utilize its resources or modify its internal practices to assist plaintiffs' counsel in collecting any fee award that the court may grant." SA Section III(C)(1)(c). Accordingly, to the extent that the application of a common fund theory would require the Department's involvement and the modification of its practices—whether to recoup funds which have already been paid or by reducing future Medi-Cal payments—petitioners' motion is barred by the Settlement Agreement.[12]

---

[12]    At oral argument, counsel for petitioners argues that the record before the Court does not permit the Court to determine whether the Director could recoup funds from providers because the Medina declarations do not expressly discuss the Department's technical ability to do so. See also Fund Reply at 12, n.16. The Court disagrees. The Director responded to the Court's request to clarify the possibility of recoupment by discussing the impact of the Settlement Agreement, which provides that even if the State could recoup funds, the Settlement Agreement forecloses that option. For this reason, the Court denies petitioners' request, made at oral argument, for additional discovery on this issue.

**CIVIL MINUTES – GENERAL**  '**O**'

| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

Petitioners present numerous arguments to resist this conclusion, but none are availing. First, petitioners suggest that this Court may ignore the Settlement Agreement because the case did not conclude with a consent decree. Mot. at 9, n. 10; Reply at 9. However, the Court finds no reason why the Settlement Agreement does not control here, thereby binding the parties to the obligations to which they agreed and which this Court approved. Dkt. 420.

Petitioners next argue that the aforementioned provision of the Settlement Agreement does not apply to their motion because they seek attorneys' fees under a "common fund" theory, and petitioners assert that that provision only applies to fees under a "common benefit" theory. Mot. at 10–13. Petitioners further contend that the Court must strictly construe the Settlement in such a way that it only encompasses fees sought under a "common benefit" theory. Reply at 20–21. Importantly, however, this argument ignores the express, unambiguous language of the Settlement Agreement, which states that an application for attorneys' fees under the "'common benefit' theory . . . *or any other theory*" must not burden the Department. SA Section III(C)(1)(c) (emphasis added). Accordingly, this case differs markedly from <u>Muckleshoot Tribe v. Puget Sound Power & Light Co.</u>, 875 F.2d 695 (9th Cir. 1989), a case upon which petitioners rely. In that case, the settlement agreement in question was silent as to the availability of attorneys' fees, and the Ninth Circuit therefore held that it did not bar their availability. <u>Id.</u> at 697. Instead, this case is more akin to <u>Wakefield v. Mathews</u>, 852 F.2d 482 (9th Cir. 1988), where the Ninth Circuit affirmed the district court's conclusion that a settlement agreement which waived any rights to "costs or expenses of any nature whatsoever, known or unknown, fixed or contingent" foreclosed the availability of attorney's fees. <u>Wakefield</u>, 852 F.2d at 483.

Contrary to petitioners' assertions, the Court also finds that the Director is not judicially estopped from arguing that the Settlement Agreement bars petitioners' motion for fees under a common fund theory. Petitioners note that in the Director's opposition to petitioners' motion to set aside funds, filed in 2010, the Director stated that "[i]f and when attorneys' fees are considered, it should be noted that, in the Ninth Circuit, the district court has the discretion to use either the lodestar or percentage method for calculating reasonable reimbursement." Dkt. 354 at 9, n.4. Petitioners assert that in light of this statement, the Director is now "estopped" from objecting to petitioners' motion for an award of fees under a common fund. Mot. at 10, 14; Reply at 19.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
| --- | --- | --- | --- |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

To determine whether judicial estoppel applies, a court assesses whether

[(1)] a party's later position [is] "clearly inconsistent" with its earlier position . . . [; (2)] whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled,' . . . [; and (3)] whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

New Hampshire v. Maine, 532 U.S. 742, 750–51 (2001) (internal citations omitted). The doctrine may be invoked at the court's discretion. Marsburn v. Unum Life Ins. Co. of Am., 119 F. Supp. 3d 1203, 1212 (C.D. Cal. 2015). Here, judicial estoppel does not apply because the Director's current position is not "clearly inconsistent" with her earlier positions. To the contrary, while the Director previously indicated that the Court could fashion an award, at the close of the case, based on one of multiple theories for calculating attorneys' fees, she now explains that, pursuant to the Settlement Agreement which the parties subsequently executed and which this Court approved, one theory is no longer available. In making this assertion, the Director does not derive an unfair advantage; rather, she apprises the Court of changed circumstances, to which petitioners agreed, and which alter the options that remain available to the Court.

Finally, notwithstanding the effects of the Settlement Agreement, the case law which petitioners cite in support of their argument that the Court may "reinstate the status quo," does not support petitioners' request for attorneys' fees under a common fund theory. More specifically, petitioners argue that this Court may restore the "status quo"—i.e., reinstate what existed before this Court denied petitioners' motion to set aside funds—because "after a defendant has been notified of the pendency of a suit seeking an injunction against him, even though a temporary injunction be not granted, he acts at his peril and subject to the power of the court to restore the status, wholly irrespective of the merits as they may be ultimately decided." Reply at 8 (quoting Nat'l Forest Pres. Grp. v. Butz, 485 F.2d 408, 411 (9th Cir. 1973)); see also Garcia v. Lawn, 805 F.2d 1400, 1402 (9th Cir. 1986) ("It has long been established that where a defendant with notice in an injunction proceeding completes the acts sought to be enjoined the court may by mandatory injunction restore the status quo.") (quoting Porter v. Lee, 328 U.S. 246251 (1946)). Importantly, however, this case is distinguishable because the Director did not

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
|----------|------------------------|------|----------------|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

act "at her peril" with notice of a pending injunction proceeding. When she distributed the $70 million of retroactive funds, she acted pursuant to a court order. See Dkt. 323. For this reason, this case is more analogous to Matter of Combined Metals Reduction Co., 557 F.2d 179 (9th Cir. 1977), where the Ninth Circuit held that the issue of the appropriate disposition of property of a bankrupt company was mooted because the company sold the property in question pursuant to a valid court order. Id. at 192 ("[W]e cannot reverse or void the sale; it was completed in accordance with a valid order of the district court and the purchaser is not a party to this appeal. Even if the trustee's consummation of the sale was violative of the rule, it is clear . . . that the responsibility for the violation lies with the district judge[.]").

Accordingly, in light of the Settlement Agreement, which the parties executed after the Court denied petitioners' motion to set aside funds, and the case law, the Court cannot order the Director to recoup funds from the beneficiaries pursuant to a common fund theory.

## B.    Recouping Funds Directly from the Beneficiaries

The Court also cannot recoup funds directly from the individual providers who received reimbursements in return for services rendered to Medi-Cal patients. If the Court proceeded on a common fund theory and attempted to recoup funds paid directly from the beneficiaries themselves, the Court would be required to exercise jurisdiction over the hundreds of thousands of providers, providing them notice and providing them an opportunity to object to recoupment.[13] Presumably providers may assert valid reasons why the Court could not exercise jurisdiction over them, and would have the right to challenge whether they should be required to make any payments for attorneys' fees, and if so, the amount of those fees. See Hartland v. Alaska Airlines, 544 F.2d 992, 1001 (9th Cir. 1976); Vincent v. Hughes Air W., Inc., 557 F.2d 759, 765–66 (9th Cir. 1977) (holding that a district court lacks jurisdiction to order nonparties to a suit to pay into a fund for attorney's fees in certain complex litigations). These providers would also have appellate rights. Procedurally, then, recouping funds directly from the providers who

---

[13]     After the Court ordered the Director to make the retroactive payments, the Director apprised the Court of her progress in implementing that order and notified the Court that DHCS would be required to re-process approximately 4.5 million claims. See Dkt. 358 at 2.

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

received reimbursements would not be feasible.  Furthermore, petitioners have failed to propose any mechanism for directly recouping attorneys' fees from any beneficiaries.

Fractionally reducing future reimbursements paid to Medi-Cal providers would also be contrary to the case law.  To set aside a fund for attorneys' fees under a common fund theory, the Court must fairly apportion contributions to the fund, in accordance with what beneficiaries individually received.  See Paul, Johnson, Alston & Hunt, 886 F.2d at 271 (holding that an award of attorneys' fees under a common fund theory is only appropriate where "the fee can be shifted with some exactitude to those benefiting").  As the Ninth Circuit noted, however, in this case, some providers may not remain in practice, and others may not still be providing Medi-Cal services.

In sum, petitioners here fail to propose a means for recouping funds from beneficiaries that would be by fair, accurate, and proportional contributions, based on the benefits previously received by individual providers.  In light of the facts that no funds remain on deposit and the parties entered into a Settlement Agreement which forecloses the ability for petitioners to request the state's assistance in recouping funds, an award of attorneys' fees on a common fund theory is neither appropriate nor possible here.  Accordingly, the Court **DENIES** petitioners' motion for an award of common fund attorneys' fees.[14]

## IV.  CONCLUSION

In accordance with the foregoing, the Court **GRANTS** petitioners and intervenors' motions for attorneys' fees under § 1021.5, finding them entitled to a fee award under the statute.  The Court will determine the appropriate fee awards after subsequent briefing.  The Court **DENIES** petitioners' motion for an award of common fund attorneys' fees.

In light of the Court's conclusion that petitioners and intervenors are entitled to attorneys' fees under § 1021.5, the Court will direct the parties to submit briefing on the appropriate amount of fees to be awarded.  In advance of setting a briefing schedule on this issue, however, the Court first directs the Director to submit briefing, not to exceed **five (5) pages**, on (1) what, if any, discovery the Director intends to conduct with regard

---

[14]     The Court also **DENIES** as moot all remaining evidentiary objections because the Court did not rely on the evidence that was the subject of the objections.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:08-cv-03315-CAS-MANx | Date | August 6, 2019 |
|----------|------------------------|------|----------------|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. v. JENNIFER KENT, ET AL. | | |

to fees incurred by counsel for petitioners and intervenors, and (2) an estimate of when that discovery could be completed. That briefing is due **Monday, August 26, 2019**. In the event that petitioners and intervenors seek to respond to that briefing, they may submit briefing, not to exceed **five (5) pages**, by **Monday, September 9, 2019**. The Court will then hold a status conference on **Monday, September 16, 2019**, at which point it will set a briefing schedule on the amount of fees to be awarded under § 1021.5. This briefing will include complete documentation of hours spent, historical and current billing rates of timekeepers, payments already received (including the amounts and the identity of the individuals who made the payments), evidence of customary hourly rates in the community for the services rendered, and argument about the application of any multipliers.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |