**CIVIL MINUTES – GENERAL**     **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS) - PETITIONERS' MOTION FOR ATTORNEYS' FEES (ECF No. 548-1, filed on November 1, 2019)

INTERVENORS' MOTION FOR DETERMINATION OF THE AMOUNT OF ATTORNEYS' FEES TO BE AWARDED PURSUANT TO § 1021.5 (ECF No. 549, filed on November 1, 2019)

## I.   INTRODUCTION & BACKGROUND

Before the Court are petitioners Independent Living Center of Southern California, Gray Panthers of Sacramento, Gray Panthers of San Francisco, Gerald Shapiro, Uptown Pharmacy & Gift Shoppe, Central Pharmacy, Tran Pharmacy, Inc., Mark Beckwith, Jason Young, and Margaret Dowling's ("petitioners") and intervenors Sacramento Family Medical Clinics, Inc., Theodore M. Mazer, Ronald B. Mead, and Acacia Adult Day Services' ("intervenors") motions for attorneys' fees.  On August 6, 2019, the Court previously determined that both petitioners and intervenors are entitled to a fee award pursuant to California Code of Civil Procedure § 1021.5, and directed the parties to submit briefing on the appropriate amount of fees to be awarded.  See ECF No. 534 ("Fee Order"). Petitioners and intervenors filed their briefs, and accompanying materials, on November 1, 2019.  See ECF No. 548-1 ("Pet. Br."); ECF No. 549 ("Int. Br.").  Respondent Jennifer Kent, Director of the California Department of Healthcare Services ("State"), filed oppositions to each on December 16, 2019.  See ECF No. 550 ("State Opp. Int."), ECF No. 551 ("State Opp. Pet.").  Petitioners and intervenors filed replies on January 6, 2019. See ECF No. 556 ("Pet. Reply"), ECF No. 557 ("Int. Reply").

The facts and procedural history of this long-running action are well known to the parties and summarized in the prior Fee Order and the Ninth Circuit's opinion in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                              **'O'**

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

Independent Living Center of Southern California, Inc. v. Kent, 909 F.3d 272 (9th Cir. 2018).  For that reason, they are only briefly discussed here.

Petitioners are healthcare advocacy organizations, providers, and recipients who participate in California's Medicaid program, known as Medi-Cal.  Between 2008 and 2017, petitioners were represented by Lynn S. Carman, a healthcare litigation specialist and founder of the Medicaid Defense Fund, who is now deceased.  They remain represented by the law offices of Stanley L. Friedman.  Friedman, who principally practices in the area of criminal defense, joined petitioners' legal team as an "understudy" to "pinch-hit" for Carman at the beginning of the litigation. See Decl. of Lynn S. Carman, ECF No. 467 ("Carman Decl."), ¶¶ 1-3.[1]

On April 22, 2008, petitioners filed a verified petition for a writ of mandate in Los Angeles County Superior Court pursuant to California Code of Civil Procedure § 1085. ECF No. 1.  The petition sought to enjoin respondent from implementing California Assembly Bill X3 5 ("AB 5"), which altered reimbursement rates for Medi-Cal providers, on grounds that Section 30(A) of the Medicaid Act, 42 U.S.C. § 1396a(30)(A) preempted the alterations under the Supremacy Clause of the United States Constitution.  The State removed the action to this Court on the basis of federal question jurisdiction on May 19, 2008.  Id. That same day, petitioners filed a first amended verified petition.  ECF No. 6 ("FAP").

Petitioners then moved for a preliminary injunction against AB 5 on May 30, 2008. The Court denied the motion on June 25, 2008, concluding that petitioners were not likely to succeed on the merits of their claim because they failed to demonstrate that Section 30(A) of the Medicaid Act was enforceable via a private action brought pursuant to the Supremacy Clause.  Petitioners then sought emergency relief from the Ninth Circuit, which

---

[1] Carman filed this declaration on June 21, 2015 to support his then-pending application for attorneys' fees pursuant to § 1025.1, and to "set out facts that Stanley L. Friedman has made many false statements in his moving papers for § 1021.5 fees." Carman Decl., ¶ 2.  As discussed below, Carman died in 2017 before the Ninth Circuit reversed the Court's order denying the various then-pending applications.  See ECF No. 476.  After remand to this Court in November 2018, no party filed a renewed application for § 1021.5 attorneys' fees on Carman's behalf, nor did any legal representative of his estate or other successor-in-interest seek to appear in the action to prosecute the application Carman filed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                  **'O'**

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
|----------|-------------------------|------|------------------|
| Title    | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

vacated this Court's order denying the preliminary injunction, and held that petitioners could bring a private suit under the Supremacy Clause. See Indep. Living Ctr. v. Shewry, 543 F.3d 1050 (9th Cir. 2008). On remand, this Court issued an order granting in part and denying in part petitioners' motion for a preliminary injunction. On August 27, 2008, on motion by the State, the Court modified the preliminary injunction to apply only to payments "for services provided on or after August 18, 2008." In 2009, the Ninth Circuit eventually affirmed the order granting the preliminary injunction, but reversed the modification order, holding that the State of California could be held liable for reimbursements withheld for services provided between July 1, 2008 and August 17, 2008, as well as prospectively. See Indep. Living Ctr. of S. Cal. v. Maxwell-Jolly, 572 F.3d 644, 660–63 (9th Cir. 2009).

After the Court issued its modified preliminary injunction order, intervenors—several additional Medi-Cal providers, as well as three healthcare districts, represented by Hooper, Lundy & Bookman LLP ("HLB")—moved to intervene in this action pursuant to Federal Rule of Civil Procedure 24. See ECF No. 151. The Court granted the motion as to the Medi-Cal providers, but not the healthcare districts on September 15, 2018. See ECF No. 174. The Court subsequently permitted another group of intervenors represented by HLB, including the California Hospital Association ("CHA"), to intervene on March 26, 2010. See ECF No. 356.

The Supreme Court granted the State's petition for certiorari with respect to the Supremacy Clause issue in 2011. Before oral argument, the Centers for Medicare and Medicaid Services ("CMS")—the federal agency charged with administering Medicaid—disapproved the State's proposal to implement AB 5 because it did not satisfy Section 30(A). See Douglas v. Indep. Living Ctr. of S. Cal., 132 S. Ct. 1204, 1209 (2012). After oral argument, but before the Supreme Court issued its opinion, CMS then approved *some* parts of the State's proposal. Id. On February 22, 2012, the Supreme Court held that CMS's combined actions changed the case's procedural posture, and it vacated the Ninth Circuit's judgment affirming the preliminary injunction with instructions on remand to reconsider the viability of petitioners' Supremacy Clause preemption theory. Id. at 614-16.

The parties then entered into mediation, and on September 22, 2014, the Court granted a joint motion for approval of a settlement agreement that would, in principal, allow petitioners and intervenors to retain any alleged overpayments they received as a

**CIVIL MINUTES – GENERAL**                              **'O'**

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
|----------|--------------------------|------|------------------|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

result of the preliminary injunction (notwithstanding the State's right to seek to recoup those overpayments following the Supreme Court's decision in Douglas) in exchange for releasing their claims against the State. ECF No. 420 ("Settlement Agreement"). Among other things, the settlement agreement also permitted petitioners and intervenors the right to seek attorneys' fees from the State. See Settlement Agreement at § III(C)(1). After the parties settled, in a related case following Douglas that involved the State of Idaho's Medicaid program, the Supreme Court definitively rejected petitioners' and intervenors' legal theory, holding that the Supremacy Clause is "not the source of any federal rights and certainly does not create a cause of action" that permits a private plaintiff to enforce Section 30(A) of the Medicaid Act. See Armstrong v. Exceptional Child Care Ctr., Inc., 135 S. Ct. 1378, 1382 (2015).

Following the settlement, in April 2015, petitioners and intervenors filed motions for attorneys' fees pursuant to § 1021.5. The Court initially denied those motions on July 6, 2015, reasoning that the Court could not award attorneys' fees pursuant to a state law provision since this case was brought under the Supremacy Clause and involved only federal claims. See ECF No. 476. Petitioners and intervenors appealed, and the case lay dormant for more than three years. It was during this time that Carman passed away. The Ninth Circuit eventually held oral argument on September 26, 2018. HLB partner Craig Cannizzo argued for the intervenors, while petitioners retained Erwin Chemerinsky, Dean of the U.C. Berkeley School of Law, to argue in place of Carman. On November 21, 2018, the Ninth Circuit reversed this Court's order, holding that petitioners and intervenors initially brought a state law claim—the petition for a § 1085 writ of mandate—which permitted them to seek fees pursuant to § 1021.5. See Kent, 909 F.3d at 280-82. The parties then filed the instant motions. Having determined that the petitioners and intervenors are entitled to seek a fee award pursuant to § 1021.5, see Fee Order, the Court now considers what amount of attorneys' fees, if any, should be awarded.

## II.    LEGAL STANDARD

Based on the foregoing, California law provides the substantive rules of decision governing an award of attorneys' fees. See Beaty v. BET Holdings, Inc., 222 F.3d 607, 609-10 (9th Cir. 2000). To determine the amount of attorneys' fees to award pursuant to § 1021.5, courts "begin with 'a lodestar figure based on the reasonable hours spent, multiplied by the hourly prevailing rate for private attorneys in the community conducting noncontingent litigation of the same type.'" Highland Springs Conference & Training Ctr.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

v. City of Banning, 255 Cal. Rptr. 3d 331, 342 (2019) (quoting Ketchum v. Moses, 24 Cal. 4th 1122, 1133 (2001)).

"Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." Thayer v. Wells Fargo Bank, N.A., 92 Cal. App. 4th 819, 833 (2001). "There is no hard-and-fast rule limiting the factors that may justify an exercise of judicial discretion to increase or decrease a lodestar calculation." Id. at 834. "[T]he trial court is not required to include a fee enhancement to the basic lodestar figure," but "retains discretion to do so in the appropriate case." Ketchum, 24 Cal. 4th at 1138. Further, "the fact that an award against the state would ultimately fall upon the taxpayers" may also warrant reducing a lodestar award. Serrano v. Priest, 20 Cal. 3d 25, 49 (1977) ("Serrano III"); accord Rey v. Madera Unified Sch. Dist., 203 Cal. App. 4th 1223, 1243 (2012). Where a multiplier is sought, "the party seeking the fee enhancement bears the burden of proof." Rey, 203 Cal. App. 4th at 1242.

## III.    EVIDENTIARY HEARING

At the outset, the Court considers petitioners' request at oral argument for an evidentiary hearing to bolster the claims they make in their moving papers.[2] "Fee awards . . . need not be preceded by an evidentiary hearing if the record and supporting affidavits are sufficiently detailed to provide an adequate basis for calculating an award . . . and if the material facts necessary to calculate the award are not genuinely in dispute." Sablan v. Dep't of Fin. of Com. of N. Mariana Islands, 856 F.2d 1317, 1322 (9th Cir. 1988) (internal citations omitted) (holding that no evidentiary hearing was necessary before determining an entitlement to attorneys' fees). For this reason, the Ninth Circuit consistently "affirm[s] attorneys['] fee awards supported by ample evidence without requiring an evidentiary hearing." Shakey's Inc. v. Covalt, 704 F.2d 426, 435 (9th Cir. 1983) (holding that no hearing was necessary before determining amount of attorneys' fees to award).

Petitioners' request is unusual in that it is the petitioners' fee-claiming attorneys who ask to present additional evidence to bolster claims as to which they have the burden of

---

[2] Intervenors did not join in this request.

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

proof. Petitioners' counsel have *already* submitted hundreds of pages of evidence to support their claim for fees. Petitioners do not contend that additional evidence is needed to respond to any new matter raised by the State after petitioners submitted their reply. The Court finds that the parties' submissions, in combination with other evidence in the record, is sufficient to provide an adequate basis to calculate a reasonable fee award. To the extent petitioners seek to justify the reasonableness of their reported hours in the face of Carman's statements, an evidentiary hearing would not be helpful to the Court, given that Carman is not available to appear at any hearing, negating any utility the exercise might otherwise provide. Moreover, the request for an evidentiary hearing is a belated request to supplement the record with evidence that has already been, or should have been, previously submitted.

The Court finds that no evidentiary hearing is warranted in these circumstances, and petitioners' request is accordingly denied.

## IV. DISCUSSION

Intervenors' counsel, the HLB firm, and petitioners' sole surviving counsel, the law offices of Stanley L. Friedman, each move for an award of fees. The Court considers each motion in turn.

### A. Intervenors' Motion

#### 1. Lodestar Calculation

Intervenors' report a lodestar of $3,195,432.88. See Int. Br. at Attachment A. This amount reflects 5,080 hours of litigation time, billed by 28 attorneys and legal assistants between 2008 and 2019, at historic attorney rates between $275/hour for a first-year associate in 2008 to $1025/hour for a senior partner with 40 or more years of experience in 2019. See Decl. of Craig J. Cannizzo, ECF No. 549-1 ("Canizzo Decl."), at Exs. F-G. As a blended average, the HLB firm claims its lodestar rates are $629/hour.[3]

---

[3] By "blended average" the Court means the hourly rate determined by dividing the reported lodestar by the total number of hours reported.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

### a)      Reasonableness of Rates

"The reasonable market value of [an] attorney's services is the measure of a reasonable hourly rate." MBNA Am. Bank, NIA v. Gorman, 147 Cal. App. 4th Supp. 1, 13 (2006). An hourly rate is reasonable if it comports with the "prevailing rate for private attorneys in the community conducting noncontingent litigation of the same type." Ketchum, 24 Cal. 4th at 1133. "The party requesting fees bears the burden of producing 'satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Viveros v. Donahoe, No. 10-CV-08593 MMM (Ex), 2013 WL 1224848, at *2 (C.D. Cal. Mar. 27, 2013) (quoting Blum v. Stenson, 465 U.S. 886, 895-96 n. 11 (1984)); accord Save Our Uniquely Rural Cmty. Env't v. Cty. of San Bernardino, 235 Cal. App. 4th 1179, 1184 (2015) ("The party seeking attorney fees [pursuant to § 1021.5] has the burden of proving that the litigation warranted an award of attorney fees and that the hours expended and the fees sought were reasonable.").

Intervenors contend that HLB's rates are "consistent with what attorneys possessing comparable skills and experience charge for similar litigation." Int. Br. at 7. HLB represents that they are recognized healthcare litigation specialists, and support their assertions with affidavits from their attorneys, see, e.g., Canizzo Decl., Decl. of Lloyd A. Bookman, ECF No. 427-1 ("2015 Bookman Decl."), as well as a declaration from Richard M. Pearl, Esq., who states that he "specialize[s] in issues related to court-awarded attorneys' fees." See Decl. of Richard M. Pearl, ECF No. 549-2 ("Pearl Decl.), ¶¶ 10-17. According to data compiled by Pearl, HLB attorneys charge rates that "are well within" and sometimes below, "the range of rates charged by comparable qualified attorneys for reasonably similar work." Pearl Decl. ¶ 12.

The State concedes that HLB attorneys are "experts in the field, capable of handling complex health care matters." State Opp. Int. at 21. But the State argues that HLB's requested rates are inflated because "firms such as HLB routinely give clients substantial discounts on their standard market rates." See State Int. Opp. at 11. Indeed, according to the State, HLB granted its clients a discount in this matter, and it argues that those discounted rates, not HLB's market rates, should dictate the attorney fee award, if any, that HLB recovers. Id. at 12. The State also contends that HLB's rates are effectively inflated because HLB's highest billing partners performed "75 percent of [HLB's] work on this matter," including for tasks that, the State contends, could have been "performed by less

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

experienced attorneys." <u>Id.</u> at 12 (citing Cannizzo Decl., ¶ 32, Exs. F, G). <u>See, e.g.,</u> <u>Orantes-Hernandez v. Holder</u>, 713 F. Supp. 2d 929, 969 (C.D. Cal. 2010) (applying 5% across the board reduction in fees awarded because much of plaintiff counsel's billed work "could have been delegated to a less experienced member of the litigation team"); <u>accord</u> <u>1130 Hope St. Inv. Assocs., LLC v. Haiem</u>, No. B254143, 2015 WL 1897822, at *11 (Cal. Ct. App. Apr. 27, 2015) (reducing fee award under California law to account for work that "could have been prepared by a paralegal or less experienced attorney").[4]

The Court finds that HLB's claimed hourly rates are reasonable. Review of the data compiled in the Pearl Declaration indicates that HLB's rates are, in fact, well within the range of what comparably experienced Los Angeles and San Francisco attorneys with issue-area experience and expertise charged during the relevant time period. See Pearl Decl., ¶¶ 10-14. In addition, a court in this circuit found in 2012 that $580/hour was a reasonable rate for two HLB junior partners in Los Angeles, that $400/hour was a reasonable rate for an HLB sixth-year associate, and that $300/hour was a reasonable rate for an HLB second year associate. <u>See</u> <u>Lodi Mem'l Hosp. Ass'n, Inc. v. Blue Cross of California</u>, 12-CV-1071 WBS (GGH), 2012 WL 3638506, at *10-11 (E.D. Cal. Aug. 22, 2012). Since those 2012 rates are consistent with what HLB seeks to recover for similarly experienced attorneys in this matter for work done in 2012, <u>see</u> Cannizzo Decl., Ex. G, the Court finds that these findings further support a finding that HLB's requested rates are generally consistent with prevailing community standards.

The State's opposition arguments are not well-taken. With respect to the State's argument that many of the tasks performed by HLB senior attorneys could have been performed by less experienced associate attorneys, the State has "not explained why [it] believe[s] certain tasks should have been performed by" less experienced attorneys, and the State has not shown how the Court "would go about making such a determination, even if it were appropriate." <u>Cf.</u> <u>Seldon v. 7-Eleven Inc.</u>, No. 14-CV-1621-PJH, 2016 WL

---

[4] Federal courts may consider unpublished California opinions as persuasive authority. <u>Emp'rs Ins. of Wausau v. Granite St. Ins. Co.</u>, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003) (stating that the court "may consider unpublished state decisions, even though such opinions have no precedential value"); <u>Washington v. Cal. City Correction Ctr.</u>, 871 F. Supp. 2d 1010, 1028 n. 3 (E.D. Cal. 2012) ("The Court may cite unpublished California appellate decisions as persuasive authority.").

| | | | |
|---|---|---|---|
| **CIVIL MINUTES – GENERAL** | | | **'O'** |
| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

5953148, at *7 (N.D. Cal. July 5, 2016) (rejecting argument to reduce lodestar on this basis because a reviewing court "is not required to scrutinize the time sheets to weed out tasks that may have just as easily have been performed by someone who billed at a lower rate"). And it is far from clear that such a reduction is even appropriate at all where, as here, all of the allegedly overbilled tasks at issue "qualify as attorney work." Id. at *7; see also Gates v. Rowland, 39 F.3d 1439, 1451 (9th Cir. 1994) (holding that a district court need not award different rates for different attorney tasks).

The State's argument that a reduction in the lodestar is justified because "firms such as HLB routinely give clients substantial discounts" is also without merit. The standard that determines a reasonable rate is what similarly situated private attorneys in the community charge for "*noncontingent* litigation of the same type." Ketchum, 24 Cal. 4th at 1133 (emphasis added). Accordingly, the community's "prevailing hourly rates apply regardless of whether the attorneys claiming fees charged nothing for their services, charged at below-market or discounted rates, represented the client on a straight contingent fee basis, or are in-house counsel." Glaviano v. Sacramento City Unified Sch. Dist., 22 Cal. App. 5th 744, 751 (2018) (internal marks omitted). The discounts HLB offered its clients in this case, on which the State relies, were based upon the possibility for a *contingent* recovery. See Cannizzo Decl., Ex. B ("As consideration for these and prior reduction in our fees, we are requesting that our original engagement be modified herein to include a new provision affording the firm the right to make a fee application in the federal case in the event of ultimate success.") (cited in State Opp. Int. at 12). The discounted rates actually billed thus do not represent the "prevailing rates" for non-contingent litigation, and are not the proper rates to be used to determine, or reduce, a fee award.

### b) Reasonableness of Hours Spent

HLB requests fees for 5,080 hours of attorney time between August 4, 2008 and October 28, 2019. See Int. Br. at Attachment A. HLB reports spending 3,837.6 hours to litigate and defend the preliminary injunction, 978.4 hours to establish HLB's eligibility for a fee award pursuant to § 1021.5, and 264.6 hours to litigate the present motion to secure a specific amount of fees. See Cannizzo Decl., Ex. F. HLB contends that these hours are reasonable because, pursuant to the Ninth Circuit's decision and this Court's August 6, 2019 Fee Order, they "are limited to HLB's representation of the successful non-institutional provider Intervenors." Int. Br. at 9. HLB explains that, as a result, the time

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT |

"spent exclusively on the hospital associations and other [institutional] clients . . . has been sorted out and removed" from its fee request. Id. at 10.

The State objects to HLB's stated hours on grounds that HLB should not be permitted to recover fees (1) that it already recovered from its institutional clients and third parties, as well as for its time spent (2) litigating the fee motions ("fees on fees"), or (3) intervening on behalf of its institutional clients. See State Opp. Int. at 4-11. The State also (4) generally contends that HLB failed to exercise sound billing judgment, and that its request should be reduced to exclude non-compensable redundancies between counsel. The State does not otherwise challenge the reasonableness of the total hours devoted to this litigation by HLB. Given, among other things, the duration and complexity of the litigation, the Court finds these hours to have been reasonably spent in representing intervenors in this action.

With respect to the first objection, the State argues that HLB already recovered $1.22 million as part of its recovery from a separate settlement it negotiated for its hospital clients for work that is "undifferentiated" from the work HLB seeks to recover fees for in this matter. Id. at 4-5. The State also contends that HLB received $172,326 from "non-client third parties to support its work in this case." Id. at 7. HLB acknowledges recovering fees in the separate settlement, but contends that these fees were for legal services unrelated to the services claimed by this motion. See Int. Br. at 10; see also Cannizzo Decl., ¶¶ 35-40, 44 ("With respect to 2016 hospital payments received by way of settlement of HLB's common benefit fee request . . . these payments were not made for services that are the subject of this motion."). HLB also acknowledges that it received $172,326 from a coalition of interested non-parties who it represents in other matters (including related challenges to the same Medi-Cal rate reductions), but states that these payments at most relate to separate benefits it obtained for *those* parties. See Int. Br. at 12; see also Cannizzo Decl., ¶ 41.

It is true that HLB "cannot recover the same costs twice." Bravo v. City of Santa Maria, 810 F.3d 659, 668 (9th Cir. 2016) (applying California law and citing Regan Roofing Co. v. Superior Court, 21 Cal. App. 4th 1685,1709-10 (1994)); see, e.g., Pearson v. Green Tree Servicing, LLC, No. 14-CV-04524-JSC, 2015 WL 632457, at *11 (N.D. Cal. Feb. 13, 2015) (applying California law to reduce a fee award by the amount "already paid" because "[a]llowing a double recovery of these fees would not be reasonable"). But, with regard to the hospital settlement, the State does not identify any specific time entries that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                              'O'

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

it claims to represent a basis for double recovery. Instead, the State only generally argues that (i) HLB performed undifferentiated work for its hospital/institutional clients as well as its individual provider clients, (ii) HLB recovered some fees for that undifferentiated work, and (iii) half of the undifferentiated work (and thus half of the fees) relate to benefits secured for the provider clients at issue in this motion. See State Opp. Int. at 3-5. By contrast, HLB submitted contemporaneous billing entries detailing the specific work—excised from this motion—that HLB performed exclusively for HLB's hospital clients. See Cannizzo Decl., Exs. I-1, I-2, I-3-, J, K. HLB does *not* seek to recover these fees, and limits its motion to only those fees related to HLB's representation of the individual intervenors. Id. at Exs. C, D, E (attaching those pertinent time entries).

To the extent some portion of the work reported in HLB's lodestar in this case related to HLB's representation of the individual intervenors *also* overlaps with the work that gave rise to HLB's settlement recovery from its hospital/institutional clients, it is within the Court's discretion to decline to make a reduction when "it would be impracticable, if not impossible, to separate the [fee-bearing] time into compensable and noncompensable units." Calvo Fisher & Jacob LLP v. Lujan, 234 Cal. App. 4th 608, 625–26 (2015) (stating that "a trial court has discretion to apportion or not apportion attorney fees depending upon the facts and circumstances before it," and holding that the trial court had discretion to decline a requested apportionment in similar circumstances); accord Maxim Crane Works, L.P. v. Tilbury Constructors, 208 Cal.App.4th 286, 298 (2012) (same). This is especially true where, as here, the party seeking the reduction fails to provide a principled basis "to separate the multitude of conjoined activities into compensable or noncompensable time units." Abdallah v. United Sav. Bank, 43 Cal. App. 4th 1101, 1111 (1996) (holding that trial court had discretion to decline apportionment).

As for reducing the requested award to take into account the payments HLB received from its *non-party* interest group clients, the State cites no authority to support such a reduction apart from reciting the general rule barring a double recovery. Moreover, even if these third-party payments were considered compensation for overlapping work defending the preliminary injunction for the benefit of the individual intervenors, the Court would decline to apportion those payments, as it does in connection with the hospital client settlement recovery, because it is hardly clear what attorney work is covered by the $172,326, let alone what portion of that work is attributable to the individual intervenors as opposed to the third-party beneficiaries. See Calvo Fisher, 234 Cal. App. 4th at 625-26.

**CIVIL MINUTES – GENERAL**    'O'

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

Second, the State's argument that HLB may not recover "fees on fees" is not well-taken. It is well-established that a party may seek to recover attorneys' fees for the time spent recovering those fees. Ketchum, 24 Cal. 4th at 1141 ("[A]n award of fees may include not only the fees incurred with respect to the underlying claim, but also the fees incurred in enforcing the right to [collect] fees."). Because nothing in the parties' settlement agreement expressly precludes the recovery of these fees, and because California law establishes a presumption that these fees are recoverable, HLB shall permitted to recover fees for the time it spent seeking fees in this action. See Serrano v. Unruh, 32 Cal. 3d 621, 624 (1982) ("We conclude that, absent circumstances rendering an award unjust, the fee should ordinarily include compensation for all hours reasonably spent, including those relating solely to the fee.").[5]

Third, the State contends that HLB improperly seeks to recover for 175 hours of time related to attempts to intervene on behalf of other clients not party to this case. See State Opp. Int. at 8 (citing Greenfield Decl., Ex. 29). HLB concedes that it mistakenly requested $51,998 in fees for time it spent pursuing intervention for hospitals and other non-party clients. See Int. Reply at 9-10 (citing Greenfield Decl., Ex. 29). HLB states that it intended to remove this time from its request, and agrees that it should not be permitted to recover for these hours. Id. HLB contends, however, that the State mischaracterizes other legitimate time entries, valued at approximately $42,030, as related to time spent attempting to intervene for third parties (which HLB does not intend to recover) when those hours in fact relate to the litigation of this case on the merits (which HLB does request to recover). The Court has reviewed the disputed time entries at issue, and agrees with HLB that these time entries appear to relate to recoverable work related to the merits of the instant litigation. See Decl. of Craig Cannizzo in Supp. of Reply, ECF No. 557-1

---

[5] The State also argues that HLB should not be permitted to recover for time sent pursuing a common fund fee award, since recovery for that time is typically not permitted. See Estate of Trynin, 49 Cal. 3d 868, 876 (1989) ("[A]ttorney fees awarded under the common-fund and common-benefit theories generally have been held not to include compensation for fee litigation."). However, because the State opposed a common fund recovery and took actions that made such a recovery unworkable in practice such that petitioners and intervenors were limited to filing the instant motions pursuant to § 1021.5, the Court, in its discretion, finds that the time spent pursuing the common fund recovery should be included in the "fees on fees" time that intervenors (and petitioners) may recover.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

("Cannizzo Reply Decl."), ¶ 6 and Attachment B. The Court will therefore reduce HLB's lodestar by $51,998.

The Court further finds, with respect to the fourth objection, that HLB exercised reasonable billing judgment, especially given, as noted above, the duration and complexity of this litigation. There is no basis in the record to find that HLB's efforts in this case were "duplicative" or "redundant." See Tuchscher Dev. Enters., Inc. v. San Diego Unified Port Dist., 106 Cal. App. 4th 1219, 1248 (2003) (affirming fee award, and rejecting argument that billing was duplicative and unreasonable, because party opposing fee award failed to present evidence identifying, let alone demonstrating, allegedly redundant work); Church of Scientology v. Wollersheim, 42 Cal. App. 4th 628, 659 (1996) (fee award affirmed where opponent did not present any evidence in the record that the award was based upon unnecessary or duplicative work); see also Mix v. Tumanjan Dev. Corp., 102 Cal. App. 4th 1318, 1324 (2002) (observing that it is "not unusual for a litigant to be represented by more than one attorney" and holding that "a litigant entitled to an attorney fee award may recover attorney fees for both private counsel and in-house counsel," for example, "provided" that the request is otherwise reasonable).

Therefore, in its discretion, and for the reasons discussed above, the Court concludes that the reasonable lodestar for HLB's services in this litigation is $3,143,434,88.

### 2.     Adjustments To Lodestar

Intervenors contend that HLB's services to defend the preliminary injunction warrant a multiplier of 3.0, and that HLB's services to secure fee award eligibility warrant a multiplier of 2.0. See Int. Br. at 16-24. Intervenors reason that these multipliers are justified because (i) the action involved novel, complex, and difficult legal questions, (ii) HLB obtained exceptional results, (iii) those results secured important public benefits, (iv) HLB litigated the action on a contingent basis, and (v) HLB has sustained a delay in payment. Each of these factors, if established, *may*, but need not, support an upward adjustment to the lodestar. See generally Ketchum, 24 Cal. 4th at 1133; e.g., Crommie v. State of Cal., Pub. Utilities Comm'n, 840 F. Supp. 719, 726 (N.D. Cal. 1994), aff'd 67 F.3d 1470 (9th Cir. 1995) (awarding a multiplier to § 1021.5 fee award because plaintiffs' counsel "undertook representation of plaintiffs on a contingency basis" and secured "significant public interest value" by establishing "that a public agency . . . had systematically engaged in age discrimination").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                                        **'O'**

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
|----------|--------------------------|------|-------------------|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

The State, meanwhile, contends that HLB's lodestar award should be substantially reduced to account for (i) Intervenors' limited success on the merits, (ii) the redundant work performed by HLB attorneys and co-counsel, (iii) HLB's allegedly poor billing judgment, and (iv) the fact that any fee recovery in this case would fall upon taxpayers and detract from state's ability to provide public services. See State Opp. Int. at 12-20. These factors, if established, also *may*, but need not, support a downward adjustment to the lodestar. See Ketchum, 24 Cal. 4th at 1132-33 (citing Serrano III, 30 Cal. 3d at 48); e.g., Envtl. Prot. Info. Ctr. v. Dep't of Forestry & Fire Prot., 190 Cal. App. 4th 217, 238 (2010) (holding that "a reduced fee award is appropriate" under § 1021.5 "when a claimant achieves only limited success," such as "where a prevailing party plaintiff is actually unsuccessful with regard to certain objectives of its lawsuit") (quoting Sokolow v. County of San Mateo, 213 Cal. App. 3d 231, 249 (1989)); Rey, 203 Cal. App. 4th at 1243 (trial court had discretion to reduce fee award against school district where "it was likely that any amount paid by the District would instead be cut from educational services that would otherwise be provided to the District's students").

Considering all of these factors, the Court tentatively determined prior to oral argument that no adjustment of the lodestar was warranted because the factors that favored a multiplier were offset by other factors that supported a downward adjustment. After oral argument, and consideration of the record, the Court now determines that a multiplier of 1.5 is warranted in this case. See Ctr. for Biological Diversity v. Cty. of San Bernardino, 185 Cal. App. 4th 866, 899-901 (2010) (holding that trial court had discretion to apply a multiplier of 1.5 in a § 1021.5 case that secured important public benefits on a contingent basis, and rejecting defendant's argument that the trial court was "required to discuss each of the illustrative factors set forth" in Serrano III). Key to the Court's conclusion are the following factors: (i) as the Court previously noted in its tentative order, HLB's efforts to defend the preliminary injunction on appeal and on remand after intervening in this case secured important public benefits; (ii) HLB performed this work on a contingent basis that both risked and significantly delayed HLB's ability to recover payment for its services; and (iii) although HLB formally intervened in this case *after* the initial preliminary injunction was secured, HLB worked with petitioners' lead counsel Carman to secure that relief prior to intervention, including by preparing important fact declarations and appearing in court to argue points related to the administration of the Medi-Cal program. Weighing these factors against (i) the relatively limited relief obtained through the Settlement Agreement following the Supreme Court's order vacating the preliminary injunction in Douglas, 132 S. Ct. at 1209 (later expanded upon in Armstrong, 135 S. Ct. at 1382, in which the Supreme

**CIVIL MINUTES – GENERAL**　　　　　**'O'**

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

Court held that that the theory that supported the existence of a private right of action upon which the preliminary injunction was based failed as a matter of law), (ii) the possibility that any fee enhancement might draw from the State's general fund, see Rey, 203 Cal. App. 4th at 1243 (citing Serrano III, 30 Cal. 3d at 48),[6] and (iii) the fact that HLB's hourly rates already reflect the skill and expertise needed to navigate the legal and procedural issues in this case, see Flannery v. California Highway Patrol, 61 Cal. App. 4th 629, 645 (1998) (noting that "factors such as the novelty and complexity of the case and the special skill and experience of counsel are necessarily reflected in the lodestar and do not" necessarily "merit an enhancement of that figure"); accord Ketchum, 24 Cal. 4th at 1138 (asserting that "a trial court should not consider these [multiplier] factors to the extent they are already encompassed in the lodestar"), the Court concludes that a multiplier of 1.5 is appropriate.

For these reasons, the Court concludes that HLB shall be awarded 1.5 times its lodestar of $2,222,557 for time spent litigating the merits of this action, subtotaling $3,333,835.50, plus its unadjusted lodestar of $920,878.38 for time spent litigating its fee application, for a total award of $4,254,713.88. See Int. Mot. at Att. A (breaking down intervenors' lodestar for each stage of litigation).

## B. Petitioners' Motion

### 1. Lodestar Calculation

Petitioners' surviving counsel, Stanley L. Friedman, reports a lodestar of $7,714,970.90. See Pet. Br. at 3. Friedman claims that this figure—more than twice the lodestar reported by intervenors' counsel—reflects 8,699.20 hours of attorney time, billed by Friedman and two other attorneys at his firm between 2008 and 2019, at attorney rates of $899/hour for Friedman and his partner Rafael Bernardino, and $747/hour for Friedman's more junior associate Ashton Watkins. See Friedman Decl., ¶¶ 3-4.[7]

---

[6] The Court applies less weight to this factor, but considers it nonetheless. See Serrano III, 30 Cal. 3d at 48.

[7] A third attorney who apparently worked with Friedman, Christopher Pantel, also billed time to the matter in 2015 (not more than 29.7 hours), and Friedman includes his hours at the same rate billed by attorney Watkins ($747/hour) in combination with the

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
|----------|-------------------------|------|------------------|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

Friedman's requested lodestar of $6,422,577.50 through 2015 alone is *more than five times* as much as the $1,180,500 lodestar that petitioners' lead counsel Lynn Carman requested for that same time period. Compare id. Ex. 1 with Mot. for Attorneys' Fees, ECF No. 430 ("Carman Fee Mot."), at 1. As a blended average rate, Friedman requests lodestar fees at $887/hour. Friedman claims these rates represent the prevailing market rates for his services, even though they substantially exceed the undiscounted historic hourly rates he actually charged clients during the same period reported in this case. Compare Friedman Decl., Ex. 1 (using "prevailing hourly rates" to arrive at the $7,714,970.90 figure) with id. Ex. 3 (using "historic hourly rates" actually charged to his clients to arrive at an alternate lodestar of $5,461,410, which translates to a blended average rate of $628/hour).

### a) Reasonableness of Rates

As stated above in connection with the intervenors' motion, the party seeking fees "bears the burden of producing 'satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Viveros, 2013 WL 1224848, at *2 (quoting Blum, 465 U.S. at 895-96 n. 11); accord Ketchum, 24 Cal. 4th at 1133. Following this standard, the Court cannot conclude that the "prevailing rates" requested by the Friedman firm are reasonable.

To begin with, the Friedman firm requests compensation at blended average billable rates ($887/hour) that are, on average, 140% of the blended average billable rates requested by the HLB firm and approved by the Court. These rates are also substantially greater than the rates that Carman—the attorney for whom Friedman served as an "understudy"— requested in his motion for attorneys' fees in 2015. See Carman Fee Mot. at 1 (requesting an hourly rate of $750/hour). The Court's conclusion approving HLB's rates—a blended average of $629/hour, heavily weighted toward time billed by senior partners with decades of practice experience in healthcare law relevant to this litigation—rested to a substantial degree on HLB's management, as lead counsel for the intervenors, of complex healthcare and constitutional litigation. See, e.g., Canizzo Decl., ¶¶ 3-4, Ex. A; Pearl Decl., ¶¶ 10-17; see also State Opp. Int. at 21 (acknowledging that HLB attorneys are "experts in the field, capable of handling complex health care matters"). Neither Friedman, nor the attorneys

---

hours billed by Watkins. See Decl. of Stanley L. Friedman, ECF No. 548-2 ("Friedman Decl."), at Exs. 1-3 at n. 1.

| | CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:08-CV-03315-CAS(MANx) | | Date | January 24, 2020 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | | |

with his firm, performed comparable work. Nor did petitioners retain Friedman in order to perform that kind of work. See Carman Decl., ¶¶ 2-3.

As Carman averred in his declaration, petitioners only retained Friedman as an "understudy" because of their concerns with Carman's age, health, and auditory challenges. Carman Decl., ¶ 2. And Carman only agreed to affiliate Friedman as his "subordinate associate counsel" to serve as a "backup attorney to carry on if something happened" that prevented Carman from representing petitioners at a hearing or at trial. Id. Before Carman died on February 12, 2017, nearly nine years after this litigation commenced, Friedman's role had been limited, and Carman involved Friedman "solely to meet th[e] insurance back-up requirement" that petitioners requested. Id. ¶¶ 2, 3a-3b. According to Carman, Friedman's "function was to do nothing," apart from prepare to "step in" in the event he was needed. Id. ¶ 3a.

During Carman's lifetime—which included his work at every stage of this litigation prior to the fee eligibility proceedings remanded to this Court in November 2018—Friedman's "assigned task was to sit on the bench" and simply "understand every document" Carman gave him. Id. Carman was responsible for "everything else related to the lawsuit," including "legal research," "gather[ing] the evidence," "writ[ing] and fil[ing] all the pleadings, motions, appeals, appeal briefs and other papers," and presenting "all the oral motions and appellate oral arguments." Id. ¶ 3b.[8] From the Court's review of its docket, and from its observations managing this case for nearly 12 years, the Court finds that the Friedman firm does not demonstrate that it briefed most substantive pleadings in the district court, or the Ninth Circuit, while Carman was alive. See id. ¶ 4 ("Contrary to his time sheets, Friedman did not in fact prepare, revise, or finalize any complaint,

---

[8] At the hearing on held on his application, Friedman challenged Carman's account of the petitioners' division of labor. According to Friedman, Carman could not have taken the lead in representing petitioners because Carman suffered from cognitive limitations that prevented him from performing the work of lead counsel. Counsel for the State, who dealt directly with Carman throughout this litigation and in other matters, disputed any suggestion that Carman suffered from cognitive limits other than hearing loss. The Court, having held hours of hearings in this case at which Carman appeared and took a principal role, observed that at all times, Carman demonstrated a full grasp of the issues and legal arguments. Apart from his hearing difficulties, he exhibited no cognitive limitations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                                    'O'

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

pleadings, motions, declarations, or briefs in these two cases"); Donahue v. Donahue, 182 Cal. App. 4th 259, 276 (2010) (holding that trial courts "may rely on their own experience about reasonable and proper fees" in part because "[i]n many cases, the trial court will be aware of the nature and extent of the attorney's services from its observation of the trial proceedings and the pretrial and discovery proceedings reflected in the file"); accord In re Rossco Holdings, Inc., No. CV 14-917-JFW, 2014 WL 2611385, at *8 (C.D. Cal. May 30, 2014) (holding that the court "was sufficiently familiar with the underlying litigation to assess the reasonableness of the request") (applying California law and citing Donahue).[9]

Additionally, apart from standing in for Carman at the July 11, 2008 telephonic hearing before the Ninth Circuit—the hearing at which the Ninth Circuit vacated the Court's prior order denying the preliminary injunction and granted petitioners' motion (authored by Carman) for a temporary restraining order enjoining the implementation of AB 5(X) until August 11, 2008—Friedman does not appear to have argued any substantive motion or appeal at any stage of the litigation.[10] Even before Carman died, petitioners

---

[9] At the hearing, Friedman disputed this assertion. Asked to explain which pleadings, motions, and briefs he drafted, Friedman stated that he prepared "all of them." Compare Carman Decl., ¶ 4(b) (explaining that "it is easy to see when documents are prepared, revised, finalized or filed by Carman, because Carman does not use any vertical line on the right; has never used a double vertical line on the left; and his text lines never touch any vertical line on the left, and Carman, not Friedman, signs them"). The Friedman firm may well have assisted with the electronic filing, formatting, and editing of documents, given that Friedman is the electronic filer on many documents signed by Carman filed using Carman's preferred formatting. However, based on the Court's observations, supported by the sworn statement from Carman, the Court finds that Friedman's claim to the effect that the Friedman firm prepared "all" of the pleadings, motions, and briefs in this case is not supported by the evidence. See Donahue, 182 Cal. App. 4th at 276. This conclusion is corroborated, in part, by the differences the Court has observed between pleadings filed by petitioners while Carman was alive, and pleadings filed by Friedman following remand from the Ninth Circuit after Carman died. The Court considers all of this evidence in assessing the relative roles of counsel in this litigation.

[10] The Court notes that Carman's hearing difficulties prevented him from participating in telephonic conferences and arguments. See also Carman Decl., ¶ 3a n. 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
|----------|--------------------------|------|------------------|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

retained Dean Chemerinsky to brief its pending appeal before the Ninth Circuit. See Appellants' Opening Br., Indep. Living Ctr. v. Shewry, No. 15-56142, ECF No. 4 (9th Cir. Jan. 4, 2016) (brief authored by Dean Chermerinsky as lead counsel). And after Carman passed away, Dean Chermerinsky, not Friedman, argued that appeal. Id. at ECF No. 60 (acknowledgment of hearing notice indicating that Dean Chermerinsky would argue the appeal); see also Kent, 909 F.3d at 272 (stating that appeal was indeed argued by Dean Chermerinsky). Although Friedman claims, without proffering any documentary support, that he was equally responsible for the briefing, at oral argument, Friedman conceded that Dean Chermerinsky made "substantial" edits and contributed many helpful ideas to the appellate briefs.

Against these facts, petitioners attempt to carry their burden in support of their requested rates with narrative affidavits from attorneys at the Friedman firm attesting to their skills and experience,[11] as well as an affidavit from Kevin Gerry, Esq., who represents that he is an expert in fee award determinations. See Decl. of Kevin Gerry, ECF No. 548-2 at 28 ("Gerry Decl."). The Gerry declaration offers two key conclusions. First, Gerry concludes that the Friedman firm's *historic rates*—$750/hour for Friedman and Bernardino, and $500/hour for Watkins and Pantel—are well within the range of prevailing hourly rates awarded by district courts in this circuit given Friedman and his associates experience and expertise. See Gerry Decl., ¶¶ 7-10. Second, Gerry also concludes that the Friedman firm's *requested prevailing rates*—$899/hour for Friedman and Bernardino and $747/hour for Watkins and Pantel—are also reasonable. Id., ¶¶ 15-17.

Neither conclusion is persuasive. With respect to historic rates, the average blended rate for the Friedman firm at its historic rates ($628/hour) is virtually identical to the average blended rate requested by, and approved for, the lead counsel retained by intervenors at HLB ($629/hour). The Friedman firm cannot reasonably command the same

---

[11] In their moving papers and at oral argument, counsel for the Friedman firm attest that they have substantial experience handling complex litigation related to healthcare. Friedman in particular describes representing private clients in matters involving health insurance, and representing the United States against healthcare companies and involving healthcare fraud while an Assistant United States Attorney. The Court notes this evidence, and considers it as part of its determination of the reasonable lodestar hourly rate for the Friedman firm.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

rates for their support work as the attorneys at HLB who actually, along with Carman, took the lead roles in litigating this case.

Gerry's conclusion regarding the prevailing market rate for the Friedman firm's services is, accordingly, even less persuasive. Gerry's conclusion supporting the request rests significantly, if not exclusively, upon the so-called "Laffey Matrix." See Gerry Decl., ¶¶ 15-17. "Approved originally in Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984), the Laffey matrix is an inflation-adjusted grid of hourly rates for lawyers of varying levels of experience in Washington, D.C." Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010). The Ninth Circuit, however, has cast significant doubt on the matrix's utility, much less its utility outside of the District of Columbia. See id. at 454 (affirming trial court's decision not to apply the matrix, concluding that it "is questionable whether the matrix is a reliable measure of rates," and explaining that "just because the Laffey matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away."). The Ninth Circuit's reticence to apply the rigid Laffey matrix appears especially appropriate here, where the suggested rates for the Friedman firm's work in a supporting role are so plainly incommensurate with other common sense indicators, such as the rates found reasonable for intervenors' lead counsel. See, e.g., Housing Rights Center v. Sterling, No. 03-CV-0859 DSF, 2005 WL 3320738, *2 (C.D. Cal. Nov. 1, 2005) (finding that the Laffey matrix "does not comport with the reality of Los Angeles firm billing practices.").

"When a fee applicant fails to meet [its] burden of establishing the reasonableness of the requested rates, the court may exercise its discretion to determine reasonable hourly rates based on its experience and knowledge of prevailing rates in the community." Viveros, 2013 WL 1224848, at *2 (citing cases); accord Morris v. Hyundai Motor Am., 41 Cal. App. 5th 24, 41 (2019) ("In making its calculation of a reasonable hourly rate, the court may rely on its own knowledge and familiarity with the legal market, as well as the experience, skill, and reputation of the attorney requesting fees," as well as "the difficulty or complexity of the litigation to which that skill was applied.") (internal brackets omitted).

The Friedman firm has not submitted evidence to carry its burden that either its requested or historic rates are reasonable for the services provided in this litigation. Based on the foregoing, the Court concludes that a reasonable average blended hourly rate for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

work performed by the Friedman firm while Carman was alive (through 2016) is $566/hour, which represents 90% of the average blended hourly rate approved by the Court for the intervenors' attorneys at HLB. This rate is comparable to what HLB charges clients for its more junior and mid-level attorneys' time, which the Court deems appropriate given that the Friedman firm typically only performed the support work of a more junior attorney during this time. Compare Cannizzo Decl. at Exs. F-G. The Court further determines that a reasonable average blended hourly rate for work performed by the Friedman firm after Carman died (2017-present) is $628/hour, which reflects the Friedman firm's historic rates.

### b)    Reasonableness of Hours Spent

The Friedman firm claims that it expended 8,699.20 hours of billable time on this matter. See Friedman Decl., ¶¶ 3-4. That is 3,619.20 hours *more* than (171% of) the 5,080 hours reported to have been expended by the attorneys at HLB. Compare Cannizzo Decl., Exs. F-G.[12] The State contends that this request "represents enormous overreach." State Opp. Pet. at 1.

It is unreasonable for a "subordinate" or "understudy" to bill 3,000-plus additional hours more than the HLB attorneys who played a lead role. See Carman Decl., ¶ 2-3. The request is particularly unreasonable because the Friedman firm is not attempting to recover any time billed by lead counsel Lynn Carman, who litigated this case for nearly 10 years, or Dean Chermerinsky, who briefed and argued the most recent Ninth Circuit appeal after Carman passed away. The 8,699.20 hours for which the Friedman firm seeks compensation represents time spent by Friedman and his associates *alone*. See also, supra,

---

[12] The Friedman firm claims that the 5,080 hour figure is misleading because HLB actually billed, and originally requested fees for, more than 7,000 hours. See Pet. Reply at 2 n. 3 (citing ECF Nos. 427, 428). However, the 5,080 hours figure reflects the "time associated with the benefits achieved on behalf of Intervenors *in this mater*, to the exclusion of *other parties and lawsuits*." Int. Br. at 9 (emphasis added); see also Cannizzo Decl., ¶¶ 35-40. HLB properly calculated this lower figure following this Court's and the Ninth Circuit's prior decisions instructing petitioners and intervenors to determine the amount of time spent achieving benefits for their clients in this matter. Id. As a result, the larger hour figure cited by the Friedman firm—which is not included in HLB's motion, and which incorporates time spent litigating other matters for other parties—is not the relevant point of comparison.

**CIVIL MINUTES – GENERAL**　　　　　　**'O'**

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

n. 1 (explaining that no one filed an application for attorneys' fees on Carman's behalf following remand). It is not reasonable to conclude that these supporting attorneys at the Friedman firm could have billed *nearly five times as many* hours through 2015 (7,261.6 hours) as lead counsel Carman, who drafted and argued virtually all of the pleadings in this case, and who in 2015 only sought to recover fees for 1,574 hours of work. See Mot. for Attorneys' Fees, ECF No. 430 ("Carman Fee Mot.").[13] In addition, with respect to the difference between the time reported to have been expended by HLB and the Friedman firm, even if the Friedman firm's work on this case began two to four months before counsel at HLB, the gulf between the time supporting attorneys reasonably expended while sitting "on the bench" throughout most of this litigation, and the time the Friedman firm actually reports relative to HLB, cannot be reconciled.

The State raises several specific points that illustrate that Friedman's request cannot survive scrutiny. First, the State's billing analyst, Gary Greenfield, found numerous "indications that the Friedman firm time entries are not accurate or reliable reflections of work done and that the time billed is more than what was actually or should have reasonably been billed." See Decl. of Gary Greenfield, ECF No. 552 ("Greenfield Decl."), ¶¶ 27-37.[14] For example, the Friedman firm billed 3.9 hours on May 28, 2008 and May

---

[13] The Court calculates this 2015 figure for the Friedman firm by adding the reported hours billed through 2015, as listed in Exhibits 1-3 to the Friedman Declaration. See Friedman Decl., Exs. 1-3. At oral argument, the Friedman firm argued that Carman only reported 1,574 hours of work because he failed to keep accurate billing records. There is no support for this contention in the record. In fact, in an earlier declaration, Carman confirmed that he billed *more time* than Friedman. See Decl. of Lynn Carman, ECF No. 431 ("Carman April 2015 Decl."), ¶ 14. And although Carman initially described Friedman's timekeeping as "meticulous," id. ¶ 13, he subsequently averred that, in several instances, Friedman's "so-called 'contemporary' time sheet[s]" were "false throughout," see Carman Decl. at 8 et seq.

[14] The Friedman firm moves to strike the Greenfield declaration on grounds that Greenfield offers inadmissible expert testimony, or, in the alternative, urges the Court to give Greenfield's testimony "no weight" because of an alleged conflict of interest. See generally Pet. Evid. Obj. and Mot. to Strike, ECF No. 556-1. The Court **OVERRULES** these objections. The Court finds that the Greenfield declaration is admissible for the same

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
|---|---|---|---|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

29, 2008 to prepare a two to three page *notice* of motion accompanying its preliminary injunction motion. Id. ¶ 38(b) (citing Ex. 7). That is an unreasonable amount of time for an attorney to complete a pro forma document that a paralegal could just as easily prepare in substantially less time.[15] In addition, the bulk of Friedman's reported hours appear to relate to simply reading e-mails, documents, and filings that Carman prepared and sent to Friedman. Accord Carman Decl., ¶ 16 (explaining that Friedman's role "was purely to read the material I and the opponent sent him . . . and to accompany me to all the courtroom hearings and settlement negotiations as my second chair or assistant"). These kinds of "padding in the form of inefficient or duplicative efforts" are "not subject to compensation." Ketchum, 24 Cal. 4th at 1132 (citing Serrano III, 20 Cal. 3d at 48).

Second, it appears that the Friedman firm's reported hours also contain non-compensable administrative and clerical work. See Davis v. City of San Francisco, 976 F. 2d 1536, 1543 (9th Cir. 1992), vacated on other grounds by 984 F.2d 345 (9th Cir. 1993) (holding that a party may not recover fees for time spent on purely clerical work) (citing Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989)); accord Christian Research Inst. v. Alnor, 165 Cal. App. 4th 1315, 1322 (2008) (approving, as a matter of California law, that a court may deny a fee request for "hours claimed for clerical work"); Ridgeway v. Wal-Mart Stores Inc., 269 F. Supp. 3d 975, 991 (N.D. Cal. 2017) (deducting from fee award pursuant to California law because "secretarial or clerical tasks [are] not compensable as attorneys' fees").

For instance, Friedman stated in a sworn declaration submitted at an earlier stage of this litigation that he billed more than 22 hours on June 1-2, 2008 ("i.e., did not go home – seeing the sun rise from my office") to prepare PDFs and format other documents for filings. See ECF No. 470-1, ¶ 16 (stating that Friedman prepared "OCR versions of the

---

purposes as the Pearl and Gerry declarations submitted by intervenors and petitioners, respectively. Further, the alleged conflict of interest is unsupported.

[15] Friedman disputes this evidence, and claims that this time included time spent on the brief in support of the preliminary injunction, not just the notice of motion. However, the time entries state "Prepare and Draft Notice of Motion for Preliminary Injunction" and "Review, Finalize, and file Notice of Motion for Preliminary Injunction." Id., Ex. 7. There is a separate time entry addressing revisions and edits to the motion, as well as the notice. Id.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
|----------|-------------------------|------|------------------|
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

declarations," "cleaned up" documents, and "prepared summaries and annotations"). However, in the timesheets submitted along with his instant motion, Friedman recharacterizes this time performing clerical work as "Review, Revise, Finalize, and file Declaration," and "Continue Preparing Declaration." See ECF No. 548-4. Other time entries appear to bill other obvious clerical work (i.e. preparing binders) at attorney rates. See Greenfield Decl., ¶ 44. These examples raise doubt as to whether the Friedman firm included substantial amounts of clerical time in its fee request.

Third, Friedman firm associate Ashton R. Watkins billed 196.40 hours on this case to "continue monitoring email correspondence and telephone messages [regarding] status of matter" and "continue facilitating information for" Friedman. See Greenfield Decl., ¶ 48 (discussing these entries). At oral argument, the Friedman firm explained that these entries referred to time Watkins spent checking Friedman's e-mail when Friedman was unable to do so himself. The Court appreciates the importance and need to retain this kind of auxiliary, but "monitoring" one's e-mail and voice messages appear to be clerical functions and the Court finds it should not award attorneys' fees for this time—and certainly not at $747/hour. Davis, 976 F. 2d at 1543.

The district court has the authority to "make across-the-board percentage cuts" to a fee applicant's "hours claimed" or "final lodestar" figure when a fee application is massive and unreasonable. Warren v. Kia Motors Am., Inc., 30 Cal. App. 5th 24, 41 (2018) (citing, inter alia, Gates v. Deukmejian, 987 F.2d 1392, 1399 (9th Cir. 1992)). The Court also has "broad discretion" to "deny" such "an unreasonable fee altogether." Ketchum, 24 Cal. 4th at 1138. The Ninth Circuit, for example, recently affirmed a "25% cut to [the lodestar] hours" reported by a plaintiff's attorney when the cut was supported by a clear explanation of the district court's calculation, and a comparison "using a second method of fee calculation." Johnson v. MGM Holdings, Inc, 943 F.3d 1239, 1242-43 (9th Cir. 2019).

In this instance, and for the reasons addressed above, the Court finds that a 50% reduction in the reported hours billed of 8,699 hours is warranted, and that the Friedman firm's reasonable lodestar is 4,350 hours. The reasonableness of this number of hours is confirmed by comparing it with the time reported by other counsel in this matter. For instance, by an alternative measure, the Court could have appropriately concluded that a reasonable number of hours for the Friedman firm is 4,402.8 hours. This figure represents 1,574 hours through 2014—which is the number of hours that Carman claimed in his April 23, 2015 fee application through that time, see Carman Fee. Mot. at 1, an appropriate figure

| | **CIVIL MINUTES – GENERAL** | | | **'O'** |
|---|---|---|---|---|
| Case No. | 2:08-CV-03315-CAS(MANx) | | Date | January 24, 2020 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | | |

given that, even granting credence to Friedman's claim that he performed "all" of the work that went into the representation during this time period, it would not be reasonable to conclude that Friedman's lodestar exceeds what Carman reported—plus 1,391.2 hours for 2015, 365.5 hours for 2016, 21 hours for 2017, 147.2 hours for 2018, and 903.9 hours for 2019. These hours between 2015 and 2019 represent the number of hours the Friedman firm reports to have been billed by attorneys Friedman and Bernardino for each of those years, not including the 29.7 hours billed by their associates Watkins and Pantel (which the Court addresses above). See Friedman Decl., Ex. A.

Since the 4,350 hour figure reached by assessing a 50% reduction is 98.8% of the 4,402.8 hour figure produced by this alternative reasonable method, the Court finds that the comparison supports the Court's finding that 4,350 hours is a reasonable lodestar for the hours spent by the Friedman firm.

\*     \*     \*     \*     \*

The reasonable lodestar amount for the Friedman firm is accordingly $2,731,800. This amount reflects the product of the $628/hour rate that the Court found to be a reasonable lodestar rate for the Friedman firm,[16] and the 4,350 hours that the Court found to be a reasonable lodestar for the total number of hours spent by the Friedman firm litigating this case.

The reasonableness of this figure is confirmed by a comparison using a second reasonable method of calculation. For example, the Court could have also awarded the Friedman firm a lodestar of $2,549,535, which would have reflected $886,162 for work performed between 2008 and 2014 ($563/hour, for work performed in a supporting role, multiplied by 1,574 hours), $989,022.10 for work performed between 2015 and 2016

---

[16] The Court applies the $628/hour rate, and not a combination of that rate and the lower $566/hour rate that the Court found reasonable for the work performed by the Friedman firm during Carman's life, because the Court's decision to reduce the Friedman firm's lodestar number of hours by 50% is intended to account for work performed by the Friedman firm in a supporting role to Carman. The lodestar amount reached by this method is approximately the same as the lodestar amount reached using an alternative method that considers a combination of these rates without applying a 50% reduction to the Friedman firm's reported hours.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:08-CV-03315-CAS(MANx) | Date | January 24, 2020 |
| Title | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, ET AL. V. KENT | | |

($563/hour, for work performed in a supporting role, multiplied by 1,756 hours), and $674,350.90 for work performed between 2017 and the present ($629/hour, for work performed in a leading role, multiplied by 1,072.1 hours). The Court's award of $2,731,800 is 107.1% of this figure, but sufficiently proximate to indicate that $2,731,800 is a reasonable lodestar amount.

### 2. Adjustments To Lodestar

The Friedman firm argues that the Court should apply a multiplier of at least *8.0* for essentially the same reasons that HLB cited in requesting a much lower multiplier of 2.0 to 3.0, limited to time spent on the merits period. Also compare Carman Fee Mot. at 1 (requesting at most a multiplier of 6.0). Specifically, Friedman claims a multiplier of 8.0 is warranted to account for (i) the contingent risk the Friedman firm assumed by accepting the case, (ii) the public benefit Friedman obtained through the litigation, and (iii) the complexity of the issues involved, and (iv) the allegedly exceptional results Friedman obtained. See Pet. Br. at 7-25. The State, meanwhile, argues as it did in response to the intervenors' motion that any fee award should be dramatically reduced because (i) the issues in the case were not particularly complex, (ii) Friedman's role was extremely limited, (iii) petitioners obtained only limited relief, and (iv) any fee award would fall upon and deplete public resources otherwise available to benefit Californians. See State Opp. Pet. at 12-16.

The Court considers each of these factors pursuant to the authorities cited above, see supra § IV.A.2, and declines to enhance or reduce the Friedman firm's reasonable lodestar amount. The Friedman firm's supporting role during the merits stage of this case simply does not support a fee enhancement. And while the Court appreciates the State's arguments for a fee reduction for the same reasons discussed above in connection with the intervenors' motion, the Court declines to apply one here for the same reason it discussed above.

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS** the petitioners' and intervenors' motions for attorneys' fees. Intervenors' counsel, HLB, shall recover $4,254,713.88. Petitioners' counsel, the law offices of Stanley L. Friedman, shall recover $2,731,800.

IT IS SO ORDERED.

00:00 CMJ